[Civil No. 1651.   Filed September 22, 1919.]

[183 Pac. 737.]

## UNITED VERDE COPPER COMPANY, a Corporation, Appellant, v. ALBERT WILEY, Appellee.

1. CONSTITUTIONAL LAW—MASTER AND SERVANT—EMPLOYERS' LIABILITY DOES NOT DENY EQUAL PROTECTION OR DUE PROCESS OF LAW.—Employers' liability law is not in violation of Const. U. S. Amend. 14, relating to equal protection and due process.

2. DAMAGES—LOSS OF SERVANT'S EYE REDUCED EARNING CAPACITY.— In a servant's action for personal injuries, evidence *held* to show that the loss of plaintiff's eye had reduced his earning capacity.

3. DAMAGES — MEASURE FOR LOSS OF SERVANT'S EYE STATED.—The measure of damages for a servant's personal injury is not the difference between his earning power before and after his injury, but under general allegations of a complaint for injury resulting in the loss of an eye the servant was entitled to damages for mental and physical suffering caused by the injury and extraction of his eye.

4. DAMAGES—NOT EXCESSIVE UNLESS BEYOND ALL MEASURE.—Damages will not be considered excessive, unless they are so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as to manifestly show passion, partiality, prejudice or corruption.

5. NEW TRIAL—NOT AUTHORIZED FOR NEWLY DISCOVERED EVIDENCE NOT LIKELY TO CHANGE RESULT.—In a servant's action for loss of an eye, where defendant master secured a continuance to obtain evidence that plaintiff had lost the sight of such eye previously, and later, after announcing ready for trial, introduced evidence thereon, *held*, that defendant was not entitled to a new trial for newly discovered evidence, where the full contents of the letter of new witness to former injury were not in the record, and the court is not satisfied that a different verdict would have resulted, had such witness testified.

[As to what is injury within meaning of Workmen's Compensation Act, see note in Ann. Cas. 1918B, 362.]

APPEAL from a judgment of the Superior Court of the county of Yavapai. John A. Ellis, Judge. Affirmed.

Messrs. Anderson, Coleman & Nilsson, for Appellant.

Messrs. Cox, Moore & Cox and Mr. R. B. Westervelt, for Appellee.

ROSS, J.—The appellee, while in the employment of appellant as a miner in the hazardous occupation of mining in one of its shafts, "was injured [as he alleges in his complaint] by an accident arising out of and in the course of said labor, service and employment, and due to a condition or conditions of such occupation or employment, and without any fault or negligence on his part in the following manner: . . . That, as a result of the aforementioned accident, plaintiff's right eye has been totally destroyed, and plaintiff has been compelled to have same removed, and an artificial eye put in its place. That he has had his eyesight injured permanently, and his ability to labor permanently diminished—all to the great damage of the plaintiff in the sum of $15,000." He also alleges the expenditure of $250 for surgical and medical aid, care, nursing and attention.

The plaintiff bases his action upon the employers' liability law, Revised Statutes of Arizona of 1913, title 14, chapter 6. Demurrers to the complaint, special and general, were overruled, and the trial was had upon the issues made by the general denial in the answer and the allegation that the appellee was blind in his right eye at the time he entered the service of the appellant and on the date of the alleged injury, to wit, June 18, 1917. A verdict and judgment was had for $7,500.

The first contention made by appellant mining company is that the employers' liability law, under which the action was brought, is unconstitutional, as being in violation of the "equal protection" and "due process" clauses of the Fourteenth Amendment to the federal Constitution. While this contention had been raised in this court and several times overruled (*Inspiration Cons. Copper Co.* v. *Mendez,* 19 Ariz. 151, 166 Pac. 281, 1183; *Superior & Pittsburg Copper Co.* v. *Tomich,* 19 Ariz. 182, 165 Pac. 1101, 1185; *Ariz. Copper Co.* v. *Burciaga, ante,* p. 85, 177 Pac. 29), it was not finally and definitely laid to rest until June 9, 1919, when the supreme court of the United States, in the Mendez, Tomich and three other cases, appealed to it from the federal district court, held the employers' liability law was not unconstitutional because it burdened, in certain hazardous occupations, the employer without fault, in the first instance, with the duty of compensating an injured employee, or in case of his death, his dependents, when the injury or death was not caused by the negligence of the employee. *Ariz. Copper Co.* v. *Hammer,* 250

U. S. ——, 39 Sup. Ct. Rep. 553, 63 L. Ed. 636. The over-ruling of the demurrer that raised the unconstitutionality of the law was proper, and the assignments based thereon are without merit.

It is next contended that there is no evidence to sustain the verdict, because it is not shown that appellee's earning power has been lessened by the loss of one of his eyes, and that therefore no damage was proved. Under this assignment it is insisted that the measure of damages to which appellee was entitled was the difference between his earning capacity before and after his injury, and that, if he could earn as much after as before the eye was lost, he could recover nothing. This contention is certainly a novel one, and we think without merit either in fact or law.

At the time appellee was injured, June 18, 1917, he was being paid $5.90 per day. Six months thereafter, at the trial, his earning capacity was $50 per month. His life expectancy at the time he was injured was 28.18 years. If the disparity in earning capacity continue, the loss from his injury may well equal or exceed the judgment of $7,500.

There was testimony on behalf of the appellant that it and other mines employed one-eyed miners, but one of the appellant's foremen admitted that, as between two applicants, in all other respects equal, he would employ the one with two eyes, and stated that he considered that the loss of an eye impaired a man's earning capacity. The undisputed expert testimony was to the effect that the loss of an eye diminished the power to accurately estimate and gauge distances from 60 to 75 per cent. A mere statement of the injury—the loss of an eye and its replacement with a glass substitute—indicates its permanency.

It is not true as a question of law that the measure of damages is the difference between appellee's earning power before and after his injury. Under the general allegation of his complaint, that he was injured and as a result thereof lost an eye, he was entitled to damages for mental and physical pain and suffering caused by the injury and extraction of his eye. The rule is stated in 17 C. J. 1011, as follows:

"No allegation as of special damage is necessary to recover for mental suffering, where this is allowed as an element of damages, since such suffering is inseparably connected with and attends personal injuries. Pain and suffering need not

be specially pleaded, where inseparable from, and a natural consequence of, the physical injury."

The learned trial judge, perhaps laboring under the impression that in this kind of action no recovery could be had for pain and suffering, so advised the jury. In so doing he committed error, but it was error in favor of appellant. The rule of damages, as announced by this court in *Arizona Copper Co.* v. *Burciaga, ante,* p. 85, 177 Pac. 29, and affirmed in *Arizona Copper Co.* v. *Hammer, supra,* is that it includes "all loss to the employee caused by the accident, not merely in the way of earning capacity, but of disfigurement and bodily or mental pain."

There is no claim that the verdict was rendered through prejudice or passion, and there is nothing in the record to indicate that such was the case. That being so, we think the rule laid down by Chancellor KENT in *Coleman* v. *Southwick,* 9 Johns. (N. Y.) 45, 6 Am. Dec. 253, is controlling. He said:

"The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have no standard by which to ascertain the excess."

After quoting Chancellor KENT as above, in *Chicago, R. I. & P. Ry. Co.* v. *De Vore,* 43 Okl. 534, L. R. A. 1915F, 21, 143 Pac. 864, the court made the following comment, in which we fully concur:

"We think this rule is sound, for the reason the jury and the trial judge have a much better opportunity than do the appellate judges to measure the actual damages suffered by the plaintiff and the amount which would compensate him for the injury. They have an opportunity of seeing the plaintiff and to discern his manner of testifying, his intelligence and capacity, to note his physical condition, and many other living evidences bearing upon the issue, including all the attending circumstances, of the larger part of which the appellate court is deprived. The jury, thus being in possession of all the facts and circumstances, is required to pass upon this issue as an issue of fact, under an appropriate charge of the court as to the law. Their solemn finding, returned into court and

approved by the trial court, should not be disturbed by this court, unless it comes within the rule hereinbefore laid down. The trial judge has not only the opportunity afforded the jurors to gain knowledge of the conditions of the plaintiff's injury, and the amount which will compensate him, together with all the facts and circumstances surrounding his injury, but he also has the opportunity of observing the jurors in considering said cause, and of any outward feeling evidencing passion or prejudice that may be exhibited during the proceedings before him; and if it is made reasonably to appear that the verdict of the jury is excessive, by reason of any influence of passion or prejudice, it becomes his sworn and solemn duty, as a trial court, to set aside the verdict or require a *remittitur* to be filed. After he has considered this point on a motion for new trial, and approved the verdict by overruling the motion, the appellate should never disturb the finding and judgment of the trial court, except for the gravest reasons, wherein it clearly appears that the trial court has abused its discretion, or that the verdict is excessive within the rule herein stated. Quotations from many courts show this rule to be sound and in harmony with the weight of authority, and based upon reason and justice.''

We conclude, from the facts in the case, the trial court having refused a new trial, on account of the size of the verdict, we ought not to disturb it.

It is also contended the court erred in refusing to grant appellant a new trial on newly discovered evidence. The appellant's defense, as set forth in its answer, to the merits of the case, was that in 1907, while working in a mine in Nevada, appellee was blasted, and his right eye injured and "permanently disabled, and that by reason of said injury plaintiff has been ever since . . . wholly unable to see out of the same," and "that plaintiff, at the time he entered the employment of defendant, was so injured and deprived of said sight." The amended answer setting up this defense was filed December 7, 1917; but prior thereto, on September 17, 1917, appellant, in a motion for a continuance supported by affidavit, recited the same facts and asked time in which to procure witnesses or evidence to establish this defense. The motion for continuance was granted, and the order setting the case for trial on September 29th was vacated. December 11th the setting was again vacated on application of appellant, and upon its motion

XX Ariz.—34

the date of trial fixed as December 21, 1917, and on this date the minute record shows that "the respective parties answered ready for trial." At the trial appellant had five witnesses who had worked with appellee in its mines prior to June 18th, the date of the alleged injury. One of them testified:

"The eye was dead; it was running all the time; it looked dead. . . . I asked him what was the matter with his eye, and he told me that he had lost the sight of his eye in Nevada from the effects of a blast. It was the right one."

The other four witnesses testified in effect to the same thing. Appellee testified that the sight of his right eye was good, and denied ever admitting to appellant's witnesses that he had lost the sight thereof. Two other witnesses, well acquainted with appellee before June 18th corroborated his statement as to the soundness of his right eye. This sharp conflict in testimony was resolved by the jury against the appellant.

The showing on appellant's motion for a new trial is that on January 16, 1918, one C. K. Norris, of Garden City, California, a fellow workman with appellee when he was injured in a Nevada mine, was located by accident; that said Norris knew appellee and the extent of his injuries; "that said injuries consisted of one broken arm, the sight of one eye destroyed," etc., and that upon a new trial he would testify to the same either in person or by deposition; that said Norris had written appellant's agent a letter "giving the foregoing facts and information." This letter was not exhibited.

We think the record shows appellant was diligent in searching for testimony to support or prove its defense that appellee's right eye was blind at the time he began working fo. it; but it also appears that appellant was satisfied, when it announced ready for trial on December 21st, to risk the issue upon the evidence it had at hand. It might have asked for another continuance, urging as a reason therefor inadequacy of time to locate witnesses of a fact that had happened ten years before in a foreign jurisdiction. It chose not to do so, and to proceed with the trial. We think, in the circumstances, the application for a new trial ought not to be regarded with special favor. Besides, we are not satisfied a new trial would result in a different verdict, even if Norris should testify as represented. The letter he wrote appellant's agent is not in the record, nor does the record purport to contain its full contents. So far as may be known, it may have contained other

statements that would completely nullify "the foregoing facts and information." In *Superior & Pittsburg Copper Co.* v. *Davidovitch,* 19 Ariz. 402, 171 Pac. 127, the showing for a continuance was very similar to the present showing.   We there held the refusal of the application was not error.

. The judgment is affirmed.

CUNNINGHAM, C. J., and BAKER, J., concur.