[Civil No. 3291. Filed March 21, 1933.]

[20 Pac. (2d) 296.]

CITY OF PHOENIX, a Municipal Corporation, Appellant, v. VIRGINIA B. MAYFIELD, Administratrix of the Estate of LENA PEARL GUNN, Deceased, Appellee.

538

Mr. L. C. McNabb, for Appellant.

Messrs. Cox & Moore, for Appellee.

ROSS, C. J.—The administratrix, Mayfield, brought this action for damages to the estate of Lena Pearl Gunn, alleging that the latter came to her death through the negligence of the defendant, city of Phoenix; and, from a verdict and judgment in her favor, the city appeals.

The intestate came to her death in an accident at about 9 o'clock in the evening of October 30, 1931, at the junction of Jackson Street and Nineteenth Avenue, when the automobile in which she was riding ran into an open irrigation canal, about 10 feet wide and 4 feet deep, owned and maintained by the Salt River Valley Water Users' Association. The canal parallels Nineteenth Avenue, north and south, and is just inside the eastern limits of that avenue. Its banks rise above the natural grade of the surrounding ground from 1.6 feet on the west to 4.7 feet on the east side thereof.

Nineteenth Avenue is one of the principal thoroughfares of the city. It is about 94 feet wide at this point, with an 18-foot pavement near its center.

Jackson Street, as platted, runs through the city east and west, and crosses Nineteenth Avenue at right angles. Coming from the west, it is open and improved for traffic up to the canal on the east side of Nineteenth Avenue. From this point for a distance of 200 feet easterly Jackson Street has not been opened or improved by the city. This space is covered with cinders and slag from a near-by foundry, and is crossed near its east end by the Santa Fe Railroad tracks. Jackson Street from the east end of these 200 feet is open and improved. It was electrically lighted on the night of the accident and being used for traffic both east and west of the unimproved part.

The car in which deceased was riding with four other persons was a 1930 Ford roadster. The deceased and a companion were in the rumble seat. Three persons occupied the front seat, one being Howard Conoway, the driver, a young man 24 years of age. They started from Twenty-First Avenue on Jackson Street, going east, and while traveling, as plaintiff's witnesses say about 20 miles an hour and defendant's witnesses say 40 or more miles an hour, ran into the open canal, and as a result the deceased received injuries from which she later died.

The negligence charged is in leaving the irrigation canal "without any guards or rails or barriers or notice or warning of any kind or character to notify the public of the existence of said precipitous embankment or canal on said street," and in permitting "said street and said irrigating canal to remain in such unsafe condition that one traveling eastward on said Jackson Street and approaching 19th Avenue could look and see and the driver of the car in which plaintiff's intestate was riding, while exercising due care for his own safety and the safety of the passengers in said automobile, did look eastward and see. other automobiles and vehicles approaching from the

east on said Jackson Street, and it being dark and the light shining on the ground immediately east of said 19th Avenue and Jackson Street made said ground have the appearance of an open street, and by reason thereof the driver of said automobile proceeded on eastward without stopping and said automobile ran into said unprotected irrigation ditch, as aforesaid, causing the injury and death of plaintiff's intestate as above set out.''

The defenses consist of a general demurrer, denials and contributory negligence, in that the condition of the street was in plain, obvious, and full view, and was known by the deceased, and notwithstanding she permitted Conoway to drive into the unopened portion thereof at an excessive and dangerous rate of speed and over and against the embankment of the irrigating canal, thus carelessly and negligently contributing to her injuries and death.

The first question to be decided is whether the transcript of the reporter's notes is properly a part of the record. Appellee made a motion to strike it, and, although this motion has heretofore been granted, we have concluded to reconsider it. It appears the transcript was filed with the clerk of the superior court on September 19, 1932, but notice thereof was not served upon appellee's counsel until September 30th. The judge approved and certified to its correctness on October 11th.

Section 3865, Revised Code of 1928, provides that notice of the filing of the transcript of the reporter's notes shall be served upon the opposite party, without stating when. But, when construed with other provisions of that section and the succeeding section, it is probable it was intended that the notice should be served at or before its filing. But we construe this requirement as directory only, and therefore not jurisdictional. The purpose of the notice to the opposite party is that he may be afforded an oppor-

tunity to agree to the correctness of the transcript or to specify wherein it is defective, and to allow him twenty days to do this if he so desires. Section 3866, Id.

The transcript, after appellee was served with notice of its filing, remained on file with the clerk for thirteen days, as shown by the filing marks thereon, and no objection was taken to it during such period. Nor has it been suggested since that it is incorrect or defective. If there were some showing by appellee that the transcript is defective and that the thirteen days it remained with the clerk after appellee was served with notice was not sufficient time to examine it for errors or defects, the motion to strike would present a very different question. We assume, in view of the judge's certificate and appellee's acquiescence, that the transcript is correct. Such being the situation, its consideration cannot in any manner result in any injury to appellee of which she may complain. Without stating the reasons the strict letter of the statutes was not followed, we think they were such as to justify, if not require, that we exercise our discretion in the matter and reinstate the transcript as a part of the record, especially since it is unquestionably correct.

We wish to say, however, that the observance of these procedural matters is important, and neglect to follow them substantially will not be tolerated. Parties must understand that they are to be followed and that departures from them, unless excused upon the soundest reasons, will not be permitted. Cases should when possible be decided on their merits rather than go off on some technical ground; and to that end, while a substantial compliance with the statutes and the rules will be exacted, too great strictness should not be required.

The complaint does not allege that a claim or demand for damages to the estate of plaintiff's

intestate was presented to the city manager for allowance or disallowance before bringing action. Appellant strenuously insists that such an allegation was essential under section 14 of chapter 18 of the charter of the city of Phoenix, and that the overruling of the general demurrer was for that reason error. The pertinent part of section 14 reads as follows:

"The manager must not hear or consider any claim in favor of any person against the City unless an account properly made out giving all the items of the claim, duly verified as to its correctness and that the amount of the claim is justly due, is presented to him within six months after the last item of the account accrued, except claims of officers and employees of the City for their salaries. When the manager finds that any claim presented is not payable by the City or is not a proper city charge it must be rejected. If he finds it to be a proper city charge, but for a greater amount than is due, the manager may allow the claim in part and order paid the portion allowed on the claimant filing his receipt in full for his account. A claimant who is not satisfied with the rejection of his claim or demand, or the amount allowed him on his account, may sue the City therefor at any time within three (3) months after final action of the manager, but not afterwards. No demand on the City shall be allowed by the manager in favor of any person in any manner indebted to the City without first deducting such indebtedness, or in favor of any officer whose accounts shall not have been rendered and approved, or who shall have neglected or refused to make his official returns or reports in writing, as required by the provisions of this Charter or any ordinance of the Commission, or in favor of any officer who shall wilfully neglect and refuse to perform any of the duties of his office."

Unquestionably a claim or demand of the kind described must be made out in the manner and form provided and presented to the city manager "within six months after the last item of the account accrued," but the whole context of said section 14

shows that the claims or demands referred to are those growing out of contract and not tort. If the claim or demand be for labor or goods or merchandise furnished the city, it must be itemized and verified and presented within six months after the last labor or after the last item of merchandise became due. Damages for unlawful death or personal injuries are not described by items accruing at different times, nor can they be itemized in an "account" and their "correctness" verified, nor can they be described as "due" the claimant as in debt. *Miller* v. *Village of Mullan*, 17 Idaho 28, 104 Pac. 660, 19 Ann. Cas. 1107. A proper statement of the rule is found in 43 Corpus Juris 1190, section 1958, as follows:

"As a general rule charter or statutory provisions requiring notice or presentation of 'debts,' 'claims,' or 'demands,' without otherwise specifying their nature, and especially when accompanied by a requirement that such claim, etc., be itemized, apply only to actions *ex contractu,* and not to actions for tort; and the same is true in respect of a statute requiring presentation of 'accounts' against the municipality."

The numerous cases cited by appellant, holding that a charter provision requiring as a prerequisite to maintaining a suit for tort the presentation of a claim or demand to the auditing body of the municipality, while announcing perfectly good law, are not in point. They would be if the above provisions of appellant's charter covered any and all claims or demands, of whatever nature, or specifically required that demands or claims for personal injuries should first be presented to the municipality for allowance.

Appellant says it was under no duty to place signs warning the public of the open canal, or to construct guards or barriers over or against it to protect the traveling public, because the place where the accident occurred, and for 200 feet east thereof, had not been opened or improved by the city for travel or use, that

it was discretionary with the city to open or not open said space on Jackson Street, and that for failure to exercise said discretion it incurred no liability to persons injured thereby, and that for these reasons the general demurrer to the complaint should have been sustained.

Under the law the city commission is vested with the power and authority to improve the whole of its streets or any portion thereof, either in length or width. Section 511, Rev. Code 1928. Throughout its whole length, Jackson Street is platted and designated as one of the city's highways, the part unimproved as well as the portion that had been suitably improved for travel. The city commission, as the legislative body of the city, was within its rights in improving the west end and the east end of Jackson Street, and in leaving the 200 feet between the west line of the canal and the Santa Fe Railway track unimproved. The city's liability, if any, cannot be founded upon its failure to make the improvement of Jackson Street continuous from one end to the other, but because, in making the improvement, as it did, it created a dangerous condition in the street from which it might reasonably have anticipated that travelers thereon exercising ordinary care and caution would encounter such danger and sustain injuries unless warnings or other protective measures against the danger were taken. In most jurisdictions, unless exempted therefrom by statute, it is the duty of a municipality to exercise ordinary care to keep its streets in a condition of reasonable safety for the use of the public. This duty is generally regarded as ministerial and corporate, and for a neglect to perform it the municipality may become liable for resulting injuries, if any. 43 Corpus Juris 974, section 1755; *Strickfaden* v. *Greencreek Highway Dist.*, 42 Idaho 738, 248 Pac. 456, 49 A. L. R. 1057; *City of Douglas* v. *Burden,* 24 Ariz. 95, 206 Pac. 1085. Where

the municipal authorities construct or improve a street, and leave therein excavations or embankments or canals, the municipality is liable for personal injuries caused by the failure to erect guards or railings to prevent accidental driving into or over such excavations, embankments, or canals. The negligence consists, not in the plan of the work, or the manner in which it is done, but in the failure to provide suitable protection against accident after the work is completed. 43 C. J. 1033, § 1814; *Chance* v. *City of St. Joseph*, 195 Mo. App. 1, 190 S. W. 24; *Brooks* v. *City of Monterey*, 106 Cal. App. 649, 290 Pac. 540; *Lendrum* v. *Village of Cobleskill*, 192 App. Div. 828, 183 N. Y. Supp. 215; *Bean* v. *City of Portland*, 109 Me. 467, 84 Atl. 981; *Nicholson* v. *Town of Stillwater*, 208 N. Y. 203, 101 N. E. 858; *Corcoran* v. *City of New York*, 188 N. Y. 131, 80 N. E. 660.

Leading up to the 200 feet that were not improved, Jackson Street had been either graded or paved and lighted by electricity. One traveling in either direction towards the unimproved portion thereof, if not acquainted with the situation, would naturally assume, especially if he saw headlights of automobiles coming from the opposite direction, that the street was open and in use throughout.

The appellant assigns as error the court's refusal to instruct the jury to return a verdict in its favor at the close of appellee's case, upon the ground and "for the reason that there was no testimony whatever offered which would or could establish liability." Under this assignment the evidence is discussed at considerable length, with a view, apparently, of trying to convince the court that, if Conoway, the driver of the automobile in which the intestate was riding, had been exercising ordinary care and caution the accident would never have occurred. It is said the driver was not looking at the road for, if he had been, he could have seen that Jackson Street stopped

at the canal; that he was driving at an excessive and reckless speed when he turned into Nineteenth Avenue, so that he could not stop his car before running into the canal; that the accident was due to his inattention and lack of control of his car as he approached and crossed Nineteenth Avenue. These deductions from the evidence may be entirely justified. Whether the driver was or was not negligent and careless is a question for the jury. Section 5, art. 18, Const.; *Dennis* v. *Stukey,* 37 Ariz. 299, 294 Pac. 276; *Pacific Const. Co.* v. *Cochran,* 29 Ariz. 554, 243 Pac. 405; *Davis* v. *Boggs,* 22 Ariz. 497, 199 Pac. 116; *Inspiration Consol. Copper Co.* v. *Conwell,* 21 Ariz. 480, 190 Pac. 88. The court properly instructed on the issue of contributory negligence, and advised the jury that, if the negligence of the driver contributed to the accident, appellee should not recover.

The giving of the following instruction is assigned as error:

"The specific ground upon which this action upon the part of the plaintiff is predicated is that of negligence on the part of the City of Phoenix in its failure to properly protect travelers upon Jackson Street coming east to Nineteenth Avenue against injury by reason of Jackson Street ending at that point and by reason of the danger, alleged danger, existing for some distance east of Nineteenth Avenue. The plaintiff claims that by reason of the negligence on the part of the defendant, as alleged in the complaint, that the deceased came to her death as a result of such negligence, and that her estate has been damaged thereby in the amount of $25,000.00."

It is said this instruction directs the jury "to find for plaintiff if the City of Phoenix did not have a sign up at the end of this street"; that it "assumes that the city must place a warning sign at this particular point, and that such failure constituted negligence—actionable negligence." We do not think the instruction susceptible of such a construction. It

is a statement of appellee's contentions, and gives no intimation of the kind suggested. In equally fair and unbiased language, and as a part of said instruction, the defendant's contentions were also set forth.

The following instruction is excepted to:

"Now, the material allegations of the complaint which the plaintiff is required to prove by the greater weight of the evidence is, first, that the city was negligent in the maintenance of its street at the intersection of Jackson Street and Nineteenth Avenue in failing to place there proper danger signs under the necessity of such sign or notice of danger at the end of Jackson Street coming east to Nineteenth Avenue; second, that there was an injury to the plaintiff's estate, to the deceased's estate, as a result of this negligence, and that the negligence of the City in failing to maintain such sign or signal of danger was the proximate cause of the injury complained of, and lastly the amount of damages due the estate of the deceased," on the ground and "for the reason that such instruction presupposed the necessity of having such a warning signal at that particular point, which instruction also neglected to inform the jury that such warning signs are necessary only where certain circumstances exist."

As we understand the law, the appellant city is not an insurer of the safety of persons traveling on its streets. If there was reasonable apprehension of danger from the condition of Jackson Street to the traveling public, it was the duty of the city to take protective measures to prevent accidents and injuries. *City of Phoenix* v. *Clem,* 28 Ariz. 315, 237 Pac. 168.

"It is well settled that it is the duty of a municipal corporation to erect railings or barriers along the highway at places where they are necessary to make the highway safe and convenient for travelers in the use of ordinary care, and that it is liable for injuries to travelers resulting from a breach of its duty in this regard. Ruling Case Law, § 346. It must be deemed settled that as a general rule the necessity for barriers, including the question whether commissioners

were negligent in omitting to supply them and keep them in repair, is a question of fact for a jury. *Wood* v. *Gilboa,* 76 Hun 175, 27 N. Y. Supp. 586, affirmed 146 N. Y. 383, 42 N. E. 544, mem." *Johnson* v. *State,* 186 App. Div. 389, 173 N. Y. Supp. 701.

Whether the city exercised the care and precaution of an ordinarily prudent person under the circumstances is a question of fact for the jury. The above instruction, while not as full and clear as it might have been, does not, as appellant contends, state that it was the absolute duty of the city to place proper danger signs or notices of danger at the canal or at the end of Jackson Street, but requires such protective measures only if the jury found a necessity therefor. If the instruction was not as full and complete as appellant desired, it should have requested its amplification or offered supplemental instructions. *Southwest Cotton Co.* v. *Clements,* 25 Ariz. 124, 213 Pac. 1005; *Durazo* v. *Ayers,* 21 Ariz. 373, 188 Pac. 868.

Appellant complains of the court's refusal to give the following instruction:

"Gentlemen of the jury, you are instructed that it is negligence for any person driving an automobile to enter a through thoroughfare, like 19th Avenue is admitted to be, at a rate of speed exceeding 20 miles per hour, unless the driver of such automobile had a clear and unobstructed view for at least 200 feet on either side of the street entering such thoroughfare."

Just why the refusal of this instruction is error appellant's assignment does not indicate or state. We suppose the instruction was intended to state the speed limit law as fixed by section 1587, Revised Code of 1928, as amended by chapter 15, First Special Session, Tenth Legislature, 1931–1932, especially subdivision 2 (b) of section 1 thereof. This subdivision fixes the maximum speed of vehicles at 20 miles per hour, beginning 50 feet from an intersection and

traversing such intersection where the driver's view in either direction along the intersecting highway is obstructed within a distance of 200 feet. This provision requires a clear view for 200 feet in each direction, not along the highway the vehicle is traveling, but along the one it is crossing. The requested instruction reverses this rule and requires the driver to look along his street for traffic and other dangers, rather than along the street that he is approaching or crossing. The instruction is clearly bad, and the court correctly refused to give it.

The jury returned a verdict for the sum of $10,000. The appellant claims that this is entirely too much, and was given under the influence of passion and prejudice. The intestate was 24 years of age, in good health, with a long life expectancy. It is true she was not earning very high wages, her occupation at the time being that of a waitress. She was the mother of two children. Just what value she might have been to her estate had she lived is of course problematical. Her accumulations might have been small or considerable. The measure of damages in such a case cannot be definitely or at all accurately estimated. It was for the jury, in view of all the facts and circumstances, to determine how much her estate suffered by reason of her untimely death. We cannot say, as a matter of law, that the verdict is excessive, or that, because it seems large, the jury was actuated by prejudice and passion. An examination of the decided cases in other jurisdictions shows that the courts are unwilling to disturb the verdict of the jury merely because they might have given under the same circumstances a much smaller verdict. As to the rule in this jurisdiction, see *United Verde Copper Co.* v. *Wiley,* 20 Ariz. 525, 183 Pac. 737. While the verdict may seem high, we do not feel that we would be justified in reversing the case on that account.

The appellant in its brief argues that the instructions as a whole were very inadequate and erroneously stated the law applicable to the facts of the case. We have heretofore considered the instructions specifically assigned as error, and have also taken the trouble to examine the instructions as a whole. We think, so far as the court went, the instructions were correct and applicable to the facts. If the appellant desired additional instructions on any particular point, or those given supplemented and amplified, it had the opportunity at the trial to request them.

In its brief it also complains of the admission of certain evidence, but it did not object to its introduction, and has made no assignment covering such evidence. Such being the case, the appellant is in no position to complain.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.