HEDDEN et al. v. TOWN OF BINGHAM CANYON.

No. 5768. Decided April 28, 1938. (78 P. 2d 637.)

*Harley W. Gustin* and *Edward F. Richards,* both of Salt Lake City, for appellants.

*D. N. Straup,* of Salt Lake City, *Elliott W. Evans,* of Bingham Canyon, and *Hamilton Gardner* and *George W. Latimer,* both of Salt Lake City, for respondent.

YOUNG, District Judge.

The appellants, plaintiffs below, brought this action to recover damages for the wrongful death of their daughter, resulting from an automobile accident in the Town of Bingham Canyon, Salt Lake county, Utah. The accident which caused the death occurred January 14, 1934, at about the hour of 10:20 p. m. The alleged acts of negligence on the part of the town are: (1) In not maintaining a sufficient curb between the sidewalk and the paved street to keep vehicular travel in the street, and to prevent drivers of vehicles from driving outside the paved highway; (2) in suffering and permitting accumulations of ice and snow in the street at the place in question, thereby rendering travel in the highway unsafe and dangerous; (3) in failing and neglecting to put up or maintain curve signs or signal lights, reflectors or barriers at and about the curve to warn vehicular travelers of the existence of the curve; and (4) in permitting an extension of an iron pipe hand railing, not on the outside of and between the sidewalk and the street, but on the inside of the sidewalk.

At the conclusion of all of the evidence, both on behalf of the defendant and the plaintiffs, the court directed a verdict in favor of the defendant. The motion was based and granted on the ground of insufficiency of evidence to

show any of the alleged acts of negligence on the part of the defendant. Plaintiffs appeal and assign as error the action of the court in granting the motion and the admission of certain testimony over plaintiffs' objection. Counsel for appellants concede that if the lower court was right in granting the motion, then this court need not consider the other claimed errors. Counsel for appellants, in their brief and in their argument to this court, contend there was evidence to go to the jury on the second and third acts of alleged negligence, and, in considering the evidence with respect to these matters, the writer is cognizant of the rule that the evidence must be considered in the light most favorable to appellants' contentions. In considering the evidence as to these two questions, a statement of the evidence will be of assistance to the reader.

The evidence shows that the deceased was a resident of Salt Lake City, and that on the evening of the accident she, in company with three other young folks of about her age, left Salt Lake City in a 1931 Ford coupe to go to the Town of Bingham Canyon; that, after arriving at the point of their destination, they stayed about half an hour and then started back to Salt Lake City. Walter Holmes was the driver of the car and deceased was sitting next to him on his right, and a young man sat to the right of deceased holding the other occupant on his lap.

Holmes, who was called as a witness for plaintiffs, testified that the road upon which he was driving was a winding one, and that there was no snow and ice thereon except over by the gutter; and as he approached the scene of the accident he was driving 20 or 25 miles per hour and saw a driveway to his right which he thought was a continuation of the road he was then traveling. When he discovered his error he applied his brakes and the car started sliding. He then attempted to turn but was prevented from doing so on account of the ice; that next he felt a jar, and, after getting out of the car and investigating learned that his car had run onto the sidewalk and into an iron guard rail

on the east of the sidewalk and that the guard rail had penetrated the floor of the car and through one of deceased's legs. Deceased was rushed to a hospital, but died two days later from complications which followed as a result of the injuries suffered.

The highway at and near the scene of the accident varies in width but is approximately 20½ feet wide, and in going down the canyon courses in a northeasterly direction, but in order to avoid confusion hereafter, in referring to directions, the writer will assume that the highway at the scene of the accident runs due north. On the east side of the highway, and running parallel with it, there is a sidewalk which is about 4½ feet wide and from 3½ to 4½ inches above the level of the highway. On the east side of the walk there was a handrailing consisting of galvanized or iron pipe about 2 inches thick, set perpendicularly in the cement, and from these perpendicular iron pipes there were suspended two horizontal pipes, the first being about 20 or 21 inches above the sidewalk and the other about 20 inches above the first and at the top of the posts. It also appears that the degree of the curve is 43-44 and that the total angle of the curve is from 28 to 30 degrees, and that just a few feet north of the sharpest angle of the curve there is a wire and bracket arm extending from a light pole, from which is suspended a street or arc light of 400 candle power. The pole from which the light is suspended is on the west side of the street, and the arm extends easterly over into the road about 7½ feet. It is further shown that about 185 feet north and about 185 feet south of the scene of the accident there are arc lights of the same candle power. It also appears without question that there were no signs or signal lights to warn travelers of the existence of the curve. Again referring to the driveway which the witness Holmes testified he thought was a continuation of the road he was then traveling, the record discloses that it was unpaved and about 11.6 feet wide, leading but a short distance to an apartment house and garage. Where this side road

connects with the main highway there had been built a cement structure from the street over the sidewalk, which extended out into the street 10.8 inches. This structure is solid and has no opening to permit water to flow thereunder.

It is the contention of the appellants that this cement structure caused snow and ice to accumulate at this particular point, and that whatever snow and ice was there was not there because of natural causes. There is no allegation in the complaint that the accumulation of ice and snow at the scene of the accident was caused by a structural defect, but the case seems to have been tried as if that had been alleged. Therefore, we will discuss the matter upon the theory on which it was tried. In order to determine whether there was any evidence that the cement structure was the cause of the accumulation of ice and snow on the highway at the scene of the accident, we quote what the various witnesses had to say with respect to that matter. The witness Holmes testified:

"There was no snow and ice on the road until you got over by the gutter. The ice was right over there by the curb. I do not know how much of the road was covered with ice at that point. I didn't stop to look. I couldn't state whether the whole road was covered with ice. I may have testified that way at the former trial. I had seen ice on the road farther up, just how much I do not know, and I do not know how far in the road it extended."

The witness O. D. Henry:

"I did not notice any snow there, but frozen ice. The ice was created along the curb line all the way down. The ice would naturally slush. In the day time cars would throw ice and snow and water around, and at night it would freeze. I saw ice there on the 15th day of January, 1934, but I could not say it was the same ice I had seen prior to that time. You could see ice at this particular place practically all winter long."

The witness Corom B. Holt:

"There was snow at this particular place on the Monday following the accident."

The witness A. L. Kite:

"There was ice on the street, but I don't hardly think there was any snow on the street. The ice along the street was along at the curb here at the turn. I have seen ice at that point prior to this time. I don't know how long that same ice had been there. I don't think it could have been over that one day. The ice formed there every evening. When it was warm it would thaw and the water would run down the street, and the same evening water would accumulate there and freeze every night. This has been going on that way at the curve ever since I lived at Bingham. The ice extended out about four or five feet from the curb. When it thaws water comes down the street, and then if it gets cold enough while it is down the street it will freeze on the street. This is true about all the canyon. It is not only true just about this particular place. It is generally true along the canyon where it had a slope. It was merely a thin layer of ice that had accumulated and frozen that night, I think the result of the thaw of the day. If it was cold enough, the water running down the street would freeze at that point."

At the place of this cement structure the record shows the road slopes from the west to the east about .8 of 1 per cent and that it slopes to the north about 4 per cent. It further shows that there is no hole or depression at this point.

As we understand the position of appellants, they do not contend that the respondent is liable for snow and ice being upon the street which was there by natural causes, or that there was such an amount of ice and snow accumulated at the place of the accident which in itself constituted an obstruction rendering the use of the road unsafe and dangerous for automobile travel. What they contend is that the presence of ice was due in part at least to the alleged defective construction in the street, or in the maintenance of the alleged defect in the street, which alone, in concurrence with the ice in question, proximately caused the accident. In support of their contention counsel for appellants have cited *Scoville* v. *Salt Lake City,* 11 Utah 60, 39 P. 481, and *Berger* v. *Salt Lake City,* 56 Utah 403, 191 P. 233, 13 A. L. R. 5. A reading of these cases shows clearly that the

accumulation of ice and snow on the sidewalk was caused by artificial means. We have quoted from the record all of the evidence which might tend to show that the cement structure was the cause of the accumulation of the ice and snow at the scene of the accident, and, as we analyze the evidence, whatever snow and ice was there was due to natural causes and not to any structural defect. The slope to the north was more than four times as great as the slope to the east, the effect of which would be to cause the water to course to the north, and not to accumulate. So as to that assignment, appellants must fail.

We next come to appellants' contention that respondent's failure and neglect in not erecting or maintaining curve signs or signal lights constituted negligence, or, if not negligence per se, nevertheless raised a question of fact for the jury to determine as to whether there was negligence. On the other hand, counsel for respondent contend that there was no legal duty on the part of the town to put up signs or signals to warn travelers of the existence of the curve; and that when curve signs are put up the municipality acts merely in a governmental capacity.

In support of their contentions, appellants cite *City of Phoenix* v. *Clem*, 28 Ariz. 315, 237 P. 168, and the *City of Phoenix* v. *Mayfield*, 41 Ariz. 537, 20 P. 2d 296. In the first case mentioned, the city had made certain street improvements and in doing so had dug a trench across the road which had been filled in; a heavy rain caused the dirt to settle and a party riding over this trench in an automobile was injured. The city was held not to be liable because of lack of notice of the defect. In the last-mentioned case an open canal was left unguarded and without lights on one of the streets in the city, and the city was held liable. These cases are not in point in the case at issue. Counsel for each of the parties have cited *Wessels* v. *Stevens County*, 110 Wash. 196, 188 P. 490, 491. A reading of the case discloses that a death resulted from an automobile accident on the road between Spokane and Colville. The road is one of the prin-

cipal thoroughfares between these cities. At the point where the accident occurred the road makes a sharp or abrupt curve. It is described as a 100-degree curve. Below the road at the point of the curve is a valley and the decline to the valley is precipitous. The car was traveling 8 or 10 miles per hour, and as it rounded the curve it passed outside of the outer beaten track to the brink of the decline and rolled down the hill. The deceased went down the hill with the car and sustained the injuries from which he died. The negligence alleged was the failure to have any warning sign or barrier at the curve. The county was held not liable and the court said:

"Since the evidence fails to present a question of fact as to whether the road at the curve where the accident happened presented an extraordinary condition or unusual hazard, there is no question to submit to the jury."

The court further says:

"There are probably hundreds of just such curves upon the highways of this state, and if it were held that the county failed in the performance of its duty by not having a warning sign or barrier here, the same would be true of every other similar situation."

In the case at issue the degree of the curve is not as great and the other conditions are not as hazardous as in the last case cited. In this case the facts do not disclose that the curve was unusually hazardous. And even though we assume, which we do not, that municipalities have a legal duty to erect and maintain signals at all abrupt turns, still under the facts here presented there was nothing to go to the jury on this point.

Having thus decided that the lower court was correct in granting the motion for a directed verdict, we need not consider the other claimed errors. The judgment appealed from is affirmed. Costs to respondent.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.

WOLFE, J., being disqualified, did not participate herein.