457 P.2d 954

**Elizabeth PUMPHREY and Otho S. Pumphrey, Appellants,**

**v.**

**Mary DYNEK, Appellee.**

**No. 2 CA–CIV 635.**

Court of Appeals of Arizona.

Division 2.

Aug. 6, 1969.

Russo, Cox & Dickerson, by J. James Murphy, Tucson, for appellants.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellee.

KRUCKER, Judge.

Plaintiff-appellee, Mary Dynek, sued her daughter and son-in-law, Elizabeth and Otho S. Pumphrey, defendants-appellants, to recover certain assets which she claimed were held in trust for her by her daughter. Plaintiff alleged the funds had been commingled with other property and that defendants had refused to give her an accounting of her property. The trial court gave judgment to plaintiff in the amount of $32,361.19 plus interest and ordered de-

fendants to return mortgages on two lots in Rochester, New York. Defendants appeal from the judgment and a denial of their motion for a new trial.

The facts favorable to supporting the judgment are as follows. Mrs. Dynek came to the United States from Poland in 1905, married and raised five children in Rochester, New York. She economically sustained her family and with earnings from sewing bought two improved lots at 497 and 498 Hudson Street (hereinafter referred to as Lot No. 497 and Lot No. 498). These she fixed up and rented. Her husband, a gambler and drinker, threatened to take her property so in 1935 she put Lot No. 497 in the name of her daughter Joyce and Lot No. 498 in the name of her daughter Elizabeth. Some unrecorded deeds from the two girls back to their mother were drawn and given her in the event she wished the land back or wanted to sell it. Joyce, in 1938, deeded Lot No. 497 to Elizabeth as she had decided to leave home. Subsequent thereto she had little contact with her family. Mrs. Dynek, during this time, managed the Hudson Street property, collected rent, paid the mortgages, and ran a grocery store with the help of her son Joel. She acquired two other lots, the Henry and Evergreen Street properties, in the early 1940's. These were put in Joel's name, again from fear that her husband would seek to take them. Joel died in 1955, and the property returned to Mrs. Dynek. She at all times managed, collected rent and generally oversaw the four lots. Her daughter Elizabeth had suggested the proceeds from her holdings be invested at higher California interest rates, and Mrs. Dynek thus turned over to her approximately $20,000, beginning sometime before 1955.

In 1959, Lot No. 497 was sold by Mrs. Dynek to a Mr. Joseph Alessi, and the mortgage assigned to Elizabeth for investment purposes. Lot No. 498 was sold to a Mr. Alex Dzus in 1961 with a mortgage back to Elizabeth. Mrs. Dynek had moved in with Elizabeth and her husband in Ohio in 1961, and Elizabeth continued collecting

the mortgage payments on all the properties as savings for Mrs. Dynek. The Alessi mortgage was forfeited in 1963, and Mrs. Dynek reclaimed and sold the property to her niece. The Dzus mortgage also became delinquent, and Mrs. Dynek went back to Rochester to straighten out her affairs. She requested her mortgages back from Elizabeth and a settlement of her monies when she returned. This was not then settled. The mortgages on Henry and Evergreen Streets all this time were in joint tenancy with Elizabeth, who collected the payments. Mrs. Dynek also gave her son-in-law permission at various times to invest some of her funds in stocks. Before this action was filed, the parties had moved to Tucson and the Pumphreys had attempted to settle with Mrs. Dynek by transferring to her the stock mentioned, a duplex in Tucson, and collections from one-half of the Henry and Evergreen mortgages, minus expenses they had paid on the duplex.

Mrs. Pumphrey at all times maintained that she owned outright both Hudson properties and an undivided half interest in the Evergreen and Henry properties. The trial court determined that the two Hudson mortgages should be returned to Mrs. Dynek and a sum of money, presumably the amount owed her under the Evergreen and Henry properties and other sums invested by Elizabeth for her.

Defendants raise three issues on appeal. They claim the Hudson properties belong entirely to them; they allege the Evergreen and Henry properties are one-half owned by them; and, lastly, they allege the damages awarded were excessive.

■ As to defendants' first two allegations of error, it is well settled that determinations of fact will be sustained unless shown to be clearly erroneous. In Arizona, a constructive trust can arise when a confidential relationship exists and there has been a promise to reconvey the property. Brown v. Walls, 10 Ariz.App. 168, 457 P.2d 355 (filed July 17, 1969). Although the evidence is conflicting, we find substantial evidence to prove that Mrs.

Pumphrey held the properties in question on behalf of her mother, and at all times they were understood to be hers and could be returned whenever desired.

The third allegation made is that the damages awarded were excessive. In Arizona, an award of damages cannot be set aside as excessive, unless so grossly disproportionate as to show passion or prejudice. United Verde Copper Co. v. Wiley, 20 Ariz. 525, 183 P. 737 (1919). In the exhibits, marked Plaintiff's Exhibit No. 14, is a recapitulation of the sources of money given to Mrs. Pumphrey. An addition of the amounts paid on the Hudson mortgages, plus the unreturned one-half received from the Evergreen and Henry properties, and the $20,000 given for investment results in an amount in excess of the award given. We do not believe the award was unreasonable under the circumstances.

Judgment affirmed.

MOLLOY, C. J., and HATHAWAY, J., concur.