JAMES FRANCIS WHITTET *vs.* LUTHER B. HILTON.

Middlesex.    November 7, 1956. — December 10, 1956.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Husband and Wife,* Enticement, Separation agreement. *Practice, Civil,* Exceptions: whether error harmful. *Evidence,* Relevancy and materiality, Of consent. *Error,* Whether error harmful.

A finding that the defendant wrongfully enticed the wife of the plaintiff to leave him was warranted by evidence of her coolness to the plaintiff after six years of marriage, of her absences from home and meetings and familiarities between her and the defendant during a period of four months before she and the plaintiff signed a separation agreement and she moved into a separate apartment, of admissions by the defendant of conduct and efforts by him over that period reasonably calculated to entice her away from the plaintiff, of frequent meetings between her and the defendant after the separation, and of her eventually obtaining a divorce and marrying the defendant. [167–168]
At the trial of an action for wrongfully enticing the wife of the plaintiff

to leave him, there was no prejudicial error in excluding a separation agreement between the plaintiff and his wife if offered by the defendant to show that the separation was permanent where subsequently there was testimony that the agreement contained nothing showing that the separation was to be temporary and a controlling provision of the agreement in a form appropriate to permanent separation was then read. [168–169]

A separation agreement of the usual character between spouses did not show consent by one of the spouses to activities of a third person bringing about the separation and was not a bar to an action by that spouse against the third person for wrongfully enticing the other spouse to leave the plaintiff. [169]

TORT. Writ in the Superior Court dated September 9, 1950.

The action was tried before *Nagle, J.*

*Nathan Peikes,* for the defendant.

*Philip P. Weiss,* for the plaintiff.

CUTTER, J. This is an action of tort in two counts. On the first count for alienating the affections of the plaintiff's wife and for debauching her, there was a verdict for the defendant. No exceptions are pending relating to that count. A motion for a directed verdict for the defendant on the second count, for wrongfully enticing the wife of the plaintiff to leave him, was denied and there was a verdict for the plaintiff. The trial judge also denied a motion to enter a verdict for the defendant under leave reserved. The case is here on the defendant's bill of exceptions based upon (a) the denial of his motions for a directed verdict and the entry of a verdict for him under leave reserved and (b) the failure to admit in evidence a separation agreement between the plaintiff and his former wife. The facts, stated as favorably as the evidence warrants to the plaintiff's position, are summarized below.

The plaintiff and his wife, married in 1943, lived together, despite some controversies between them, until 1950. In January, 1950, the wife became cool to her husband and began to absent herself from home during some evenings without convincing explanation, occasionally remaining out very late at night, returning sometimes with the odor of alcohol on her breath.

The plaintiff, on the evening of February 14, 1950, went to the office of a public utility in Lowell, where his wife and the defendant both worked, to call for her after an employees' party. He saw his wife and the defendant leave the party in the defendant's automobile, go to a dance hall, where they remained about an hour, and then drive to a side street where they parked for about a half hour, embracing each other.

The couple were then living at the plaintiff's mother's house. This had been the subject of complaint by the wife and there had been, for a period of time, friction between husband and wife. During the spring of 1950, this became more intense and the couple consulted a clergyman, the plaintiff complaining about the wife "running around with the defendant" and the wife claiming she "liked the defendant very much . . . and that she would not give up the defendant." The clergyman was unable to persuade the couple to adjust their differences. A temporary separation was then discussed, and eventually the couple agreed to separate. A lawyer was consulted and a separation agreement was signed on May 19, 1950.

There was evidence from which it could have been found by the jury that the defendant had been seen with the plaintiff's wife and had taken her to lunch and out riding on occasions prior to the separation other than the one already mentioned. There was also evidence that the plaintiff and his wife "had had arguments while she was seeing the defendant" which could have been interpreted as referring to the period prior to the separation. The plaintiff's wife moved into a separate apartment on May 22, 1950, and lived there until she moved to another apartment on June 8. The jury would have been warranted in finding that the defendant paid the rent of the former of the apartments.

The plaintiff, on the night following the departure of his wife to a separate apartment, went to see his wife at about eleven o'clock. He found the defendant's automobile parked outside and rang the doorbell for some time without being admitted. Eventually someone from another apartment let

him into the building. The door to his wife's apartment was not locked and there he found the defendant and the plaintiff's wife together on the couch in the living room which was then in darkness. The defendant told the plaintiff "that he [the defendant] was going to marry" the plaintiff's wife, who then said that "she was very much in love with the defendant." She and the defendant "both said that this had been going on for four months . . . ."

There was testimony of frequent subsequent meetings of the defendant and the plaintiff's wife, of visits by them to restaurants together, and of a later visit or visits by the defendant to the plaintiff's wife's apartments. The plaintiff's wife on May 17, 1951, obtained a decree of divorce nisi from the plaintiff on the ground of cruel and abusive treatment and, in New Hampshire in 1952, married the defendant, who had lived with his former wife and grown up daughter until October, 1950.

There was no error in denying the defendant's motions that the court direct a verdict for the defendant and that it enter a verdict for the defendant under leave reserved. There was ample evidence from which the jury could reasonably have found that the defendant directly encouraged, and by his actions was the controlling cause (see Restatement: Torts, § 683, comment i) of, the separation of the plaintiff and his wife in a manner amounting to persuasion and enticement. See *Sherry* v. *Moore*, 258 Mass. 420, 423; *Georgacopoulos* v. *Katralis*, 318 Mass. 34, 36–37; *Pataskas* v. *Judeikis*, 327 Mass. 258, 259–260. The admissions on May 23, 1950, by the defendant and the plaintiff's wife that they had been "very much in love," as the result of a situation which had existed for a period of four months, could have been construed by the jury as admission of conduct and efforts by the defendant over that period reasonably calculated to entice the plaintiff's wife away from the plaintiff. There was testimony of familiarities between them prior to the separation, which was evidence of the methods of enticement used by the defendant. See *Webber* v. *Benbow*, 211 Mass. 366, 368; *Ross* v. *Nourse*, 330 Mass. 666, 669–

670.   The jury were entitled to infer, from the testimony about the behavior and statements of the couple in the wife's apartment on the night following the separation, that the conduct then observed by the plaintiff was not the first of its sort which had taken place.   See *Perry* v. *Carter*, 332 Mass. 508, 511–512.

The defendant's exception to the exclusion of the separation agreement between the plaintiff and his wife is without merit.   Although the purpose of the defendant in offering the agreement in evidence does not appear from the record, at the argument in this court, the defendant claimed that he was prejudiced because the jury might have believed from the plaintiff's oral testimony that the separation was to be temporary only, whereas the agreement would show plainly that the separation was to be permanent.   The defendant seems to have regarded it as relevant and important to show that the separation was permanent as part of his effort to prove that the separation was an accomplished fact before the defendant engaged actively in conduct which led to his subsequent marriage to the plaintiff's former wife. The separation agreement was originally offered and excluded on cross-examination and the defendant claimed an exception.   Subsequently on recross-examination, the plaintiff in substance testified that there was nothing in the written agreement which showed the separation was to be temporary and that any arrangement to that effect was "verbal" (*sic*).   The defendant then read the controlling provision of the agreement relating to the separation which was in a form appropriate for a permanent separation.   The agreement was not then reoffered in evidence.   The trial judge, as a result of this further discussion of the agreement, could reasonably have felt that the prior exception had been abandoned.   However, even if the exception to the original exclusion of the separation agreement persisted after the subsequent discussion (perhaps on some theory analogous to that discussed in *Wilson* v. *Jeffrey*, 328 Mass. 192, 193–196), the exclusion of the whole separation agreement was not prejudicial.   In view of the evidence concerning the agree-

ment admitted in the later discussion, the defendant had all the benefit from the agreement to which he was entitled for the purpose for which he now claims he offered it.

At the argument in this court, the defendant's counsel seemed also to contend that the exclusion of the agreement deprived the defendant of the chance to show that the plaintiff, by consenting to the separation agreement, had consented to the defendant's activities. This contention has no merit. This is not a case where the plaintiff consented to specific wrongful acts of his wife with the defendant which resulted in the enticement of which complaint is made. Compare *Milewski* v. *Kurtz*, 48 Vroom, 132. A separation agreement of the usual character can hardly be construed as consent by each spouse to all the acts of the other spouse (and of others who helped to bring about such spouse's action) which caused the separation. We have not found any decision in this Commonwealth which suggests that a separation agreement or a divorce or separate support decree against the spouse alleging wrongful enticement is a bar to the maintenance of an action in tort for that enticement. See *Georgacopoulos* v. *Katralis*, 318 Mass. 34, 36; *Ross* v. *Nourse*, 330 Mass. 666, 668; *Perry* v. *Carter*, 332 Mass. 508, 511 (separate support). In each of these cases cited, the plaintiff was allowed to maintain the action although such a divorce or separate support decree was apparently obtained by the spouse who was alleged to have been wrongfully enticed away.[1] Compare *Dickerman* v. *Graves*, 6 Cush. 308.

*Exceptions overruled.*

---

[1] Cases in other jurisdictions recognize the right of a spouse from whom a divorce has been obtained to sue for alienation of affections. *DeFord* v. *Johnson*, 251 Mo. 244, 253. *Patterson* v. *Hill*, 212 Mich. 635, 643–644 (separation agreement). See Keezer, Marriage & Divorce (3d ed.) § 544. See *contra Hamilton* v. *McNeill*, 150 Iowa, 470 (based on a statute).