MARY JANE MALONE, Appellant, v. OLIVER T. MOORE et al.,
Appellees.

MARY JANE MALONE, Appellant, v. HANNAH MOORE et al.,
Appellees.

GARNISHMENT:   Property Subject—Contingent Liability Not Debt
"To Become Due."   The defendant in a decree for alimony (if such
decree be assumed to create a "debt") is not garnishable on an
installment which is unmatured on the date of the garnishment, and
the maturity of which will be wholly defeated by the death of the
plaintiff in alimony before the maturity date as provided by the
decree.

Headnote 1:   28 C. J. pp. 130, 150, 189.

Headnote 1:   2 A. L. R. 506; 12 R. C. L. 794.

*Appeal from Woodbury District Court.*—MILES W. NEWBY,
Judge.

OCTOBER 25, 1927.

Two cases were consolidated for submission to the trial
court.   The appeal involves the action of the trial court in dis-
charging garnishees, on motion.   The facts essential to a consid-
eration of the questions involved appear in the opinion.—*Af-
firmed.*

*Burgess & Gill,* for appellant.

*Hays, Baron & Mathews,* for Hannah Moore, appellee.

*George Magoun,* for Sioux National Bank, Trustee, and
Garnishees, appellees.

*Shull, Stilwill, Shull & Wadden,* for O. J. Moore, appellee.

FAVILLE, J.—On November 28, 1921, Hannah Moore ob-
tained a decree of divorce from the garnishee O. J. Moore.   Said
decree awarded Hannah Moore alimony in the sum of $107,500,
payable $17,500 immediately and $10,000 annually until the

entire sum had been paid. This decree was performed by O. J. Moore until on January 31, 1924, when a supplemental decree was entered in the original divorce action. This decree was entered upon the motion of Hannah Moore, the plaintiff in the action, for a modification of the original decree. Appearance was had by both parties, and by written instrument duly filed, both parties consented to the terms of the supplemental decree. By its terms said supplemental decree set aside and annulled the original decree, and provided:

"That the said defendant, O. J. Moore, shall pay to the Sioux National Bank of Sioux City, Iowa, the sum of five hundred dollars ($500) as of the 31st day of March, 1924, and a like sum on the last day of each and every month thereafter during the lifetime of the said plaintiff, Hannah C. Moore. Said sums shall be paid to the said trustee aforesaid, and by said trustee delivered or paid to plaintiff, to be used by her for her support and maintenance only. The said sums herein provided to be paid shall be for the support and maintenance of said plaintiff, and shall not be subject to assignment or alienation by her prior to the date of their maturity and payment to plaintiff, and said plaintiff shall have no property rights or interests therein until the same are actually paid to her."

The supplemental decree further provides:

"To insure the payment of the sums herein described to be paid by said defendant, this decree and judgment shall and is hereby declared to be a lien on any and all real property of the defendant, including the homestead wherein the parties resided prior to the decree of divorce."

At the time of entry of the supplemental decree, all payments due under the original decree had been made. Since the entry of said supplemental decree, payments have been made thereunder to the trustee on the last day of each month.

The appellant holds two judgments against Hannah Moore. In one action, suit was begun on August 26, 1925, and judgment rendered March 15, 1926. General execution was issued on said judgment on May 25, 1926, and the trustee bank and O. J. Moore garnished thereunder on May 25 and May 26, 1926, respectively. After said garnishment, the said O. J. Moore did not make payments to said trustee for the months of May and June, 1926, under the supplemental decree, and the amount of said payments

exceeded the amount of appellant's judgment in that action. A portion of the claim sued on in this action was due on January 31, 1924, the date of the supplemental decree. In the other action, judgment was obtained on March 15, 1926, and garnishment was had under execution on July 16, 1926.

It is not seriously contended that the district court did not have jurisdiction to enter an order of modification of the original decree of divorce where proper application therefor was made, and the court had jurisdiction of the parties. Section 10481, Code of 1924. Our attention is therefore directed to a consideration of the supplemental decree and the rights of the parties in relation thereto, under the garnishment.

We meet at the outset the important question as to whether or not, under this decree, there was anything in the hands of the garnishees that could be the subject of a garnishment at the time the garnishment was served. There was nothing in the hands of the bank as trustee on the date of the garnishment. The real question is therefore narrowed to the proposition as to whether or not the judgment creditors of Hannah Moore could garnishee O. J. Moore for future installments of alimony that might become due under the terms of this decree. Under the statute (Code Section 12157) the service of garnishment forbids the garnishee to pay "any debt owing such defendant, due or to become due." It is also provided by statute (Code Section 12169) that judgment may be entered against a garnishee if it is made to appear that he was "indebted" to the defendant "at the time of being served with the notice of garnishment." Code Section 12172 provides:

"If the debt of the garnishee to the defendant is not due, execution shall be suspended until its maturity."

The argument of both parties evinces an exhaustive study of the authorities on the question as to whether or not a decree awarding alimony creates "a debt," within the meaning of the garnishment statute. The precise question does not appear to have been before this court heretofore.

In *Schooley v. Schooley*, 184 Iowa 835, we considered the exemption statute, with regard to the question as to whether or not a divorced husband who had married again and had thus become the head of a family could avail himself of the exemption provided by statute as to the earnings of a debtor, against an

execution issued upon a general judgment for alimony rendered in favor of his first wife. In that case there was a judgment for a stated sum, payable in installments during her life, or until she marry again. Certain installments were past due and unpaid. By a divided court we held that the husband was "a debtor" for said alimony, under such facts, within the meaning of the exemption statute, and that his personal earnings were exempt. The case is not controlling, under the situation in the instant case.

There is an exhaustive review of the authorities pro and con on the question of whether or not an award of alimony is "a debt," in the majority and minority opinions in the *Schooley* case. In view of our conclusion, we do not deem a reconsideration of that question essential in the instant case, and reserve any pronouncement thereon. Likewise, we do not pass on the question of the limitations in the decree as to the assignment or alienation of alimony. We limit our decision solely to a consideration of the terms of the decree in the instant case, and as to whether or not the garnishee O. J. Moore was subject to garnishment at the date of service of the garnishment.

In this case there was no fixed sum of alimony provided for in the supplemental decree, and none was due and unpaid at the time of garnishment. The payments to be made were wholly contingent upon whether or not Hannah Moore would be alive on the last day of each succeeding month. Was the obligation of O. J. Moore, under the decree, to pay the sum of $500 on the last day of the month "a debt *due* or *to become due*," within the meaning of the garnishment statute? Whether or not we regard a decree for alimony as "a debt," it is obvious that there was no "debt *due*" at the time of the garnishment that could be reached by the creditor. Hannah having been alive on the last day of the preceding month, and the installment of alimony for that month having been paid, there was no "debt *due*" at the time of the garnishment.

Was there "a debt *to become due*," so that it could be reached by the judgment creditor? The garnishment statute clearly contemplates that a garnishee shall be held *only* in the event that, *at the time* of the garnishment, he is *then* owing something to the judgment creditor. It must be something *then* due or something *then* owing that is to become due in the future.

In other words, in order to hold a garnishee under the statute, it must appear that there is a definite and fixed obligation to pay in any event. If such an obligation is shown, then the garnishee may be held, whether the "debt" is "due" or whether *only time* is wanting, to fix its maturity.

In *Armstrong v. Armstrong,* 196 Iowa 947, we said:

"It is elementary that the right of the plaintiff, as against the garnishee, in the absence of fraud, can rise no higher than the right of the principal defendant (*Streeter v. Gleason,* 120 Iowa 703; *Smith Lbr. Co. v. Scott County G. R. & F. Co.,* 149 Iowa 272; *Des Moines C. M. Co. v. Cooper,* 93 Iowa 654; *Smith T. & Co. v. Clarke & Henley,* 9 Iowa 241, 244; *Parker v. Carry,* 121 Iowa 388; *Munson v. Mabon,* 135 Iowa 335; *What Cheer Sav. Bank v. Mowery,* 149 Iowa 114); that only a debt already due, or for the maturity of which time alone is necessary, is subject to garnishment (*Ober v. Seegmiller,* 180 Iowa 462; *Briggs v. McEwen,* 77 Iowa 303; *Streeter v. Gleason,* supra; *Caldwell v. Stewart,* 30 Iowa 379); that the liability of the garnishee must be determined as of the date of the garnishment (Code Section 3935; *Smith Lbr. Co. v. Scott County G. R. & F. Co.,* supra; *Williams Bros. v. Young,* 46 Iowa 140; *Huntington v. Risdon,* 43 Iowa 517); and that, in order to hold a garnishee upon his answers, an indebtedness must be clearly admitted or shown thereby (*Streeter v. Gleason,* supra; *Hibbard, S. B. & Co. v. Everett,* 65 Iowa 372; *Morse v. Marshall,* 22 Iowa 290)."

With these well-established rules in mind, the question arises as to whether or not, under this decree, at the time of the garnishment there was a debt for the maturity of which time alone was necessary. In other words, was the obligation of O. J. Moore at the date of garnishment an obligation that was *certain to mature,* and only time was necessary to fix the absolute liability, or was it a mere contingent obligation, that might or might not require any payment on his part?

Under the terms of the decree, it is clear that whether or not O. J. Moore would ever become liable for any future payment at the time of garnishment depended wholly upon whether or not Hannah Moore was living on the last day of the month. It is not a case of the mere postponement of the maturity of an obligation that *must* be paid in any event at some future time. Something more than time is necessary, to fix an obligation to

pay anything, and that is the uncertain contingency that Hannah shall be living at a certain date in the future. If Hannah should die before the last of the month, certainly no liability could attach to O. J. Moore. See *Nehls v. Sauer,* 119 Iowa 440. Any contingent liability to pay upon the happening of an event would necessarily end, the moment it became apparent that the event could *never* happen. The liability of the garnishee must be determined as of the date of the garnishment. Code Section 12157; *Smith Lbr. Co. v. Scott County G. R. & F. Co.,* 149 Iowa 272; *Williams Bros. v. Young,* 46 Iowa 140; *Huntington v. Risdon,* 43 Iowa 517; *Armstrong v. Armstrong,* supra.

On *that* date, the garnishee did not owe anything that was either due at that time or was certain to become due at any future time. Could he have been discharged by paying a sum to the sheriff on that date, under Code Section 12167? How much would he have had to pay on the date of garnishment, to be exonerated?

The foregoing and other similar suggestions only serve to illustrate the patent fact that, on the date of the *garnishment,* there was no ''debt'' from O. J. Moore to Hannah Moore that was either ''due'' or certain to ever ''become due.'' The liability to ever pay anything whatever rested wholly on the contingency of Hannah's being alive at some date in the future. If a party agrees to pay a sum to another on the date of the marriage of the other party, it could not well be maintained that a garnishable debt ''to become due'' existed at any time before the date of marriage, if that ever occurred. If one promises to pay a sum only when another shall attain a certain age, there then is no ''debt to become due,'' because the contingency may never happen. Many illustrations of contingent liability could be cited. Such contingent obligations, however, do not create a ''debt to become due;'' for the contingency may never occur, and hence a binding obligation to pay may never arise.

The case of *Ottumwa Nat. Bank v. Norfolk,* 185 Iowa 1334, is not in conflict with the conclusion that, at the time of garnishment, there was no debt to become due, in the instant case. In the *Ottumwa Nat. Bank* case, a beneficiary of an insurance policy had brought suit against the insurance company, claiming that the insured was dead. At the commencement of the action, the insured was presumptively dead. The parties entered into a

stipulation whereby the insurance company paid to a trustee the amount of the policy, to be held by the trustee for a period of ten years, and then it was to be paid to the beneficiary, unless the insurance company should then be able to prove affirmatively that the insured was in fact alive. The only contingency was in the nature of a defeasance. The amount was fixed, and was in fact paid to the trustee. It belonged to the beneficiary, subject only to a condition subsequent. The court refused to discharge the garnishee, and continued the garnishment proceedings. Referring to the fund in the hands of the trustee, we said:

"We think the principal defendant herein, Norfolk, was the beneficial owner, subject, however, to a condition subsequent. Under the stipulation, she is under no burden of affirmative condition. No condition or contingency need come to pass, in order to entitle her to the possession of the money at the expiration of 10 years. If the *status quo* be maintained, then her right to the fund becomes incontestable at the end of 10 years. On the other hand, the insurance company is under the burden of proving affirmatively the condition which will defeat her right of property. In other words, the insurance company has received, for 10 years, a right of defense on the sole ground specified. Does the saving of a right of defense wholly destroy her presumptive right of property? Conceding that it creates an infirmity in or a cloud upon her title, and thereby impairs the value of her property, yet the property right remains. We think, therefore, that the beneficial ownership vested in N. M. Norfolk, subject to defeasance by the subsequent condition provided for in the stipulation."

It is apparent that the case cited presents a very different situation from the case at bar. Here, no fund had been paid to the trustee. The divorced wife, Hannah, had no property interest of any kind in any fund. Her right to ever receive anything from O. J. Moore depended wholly upon the contingency of her living until a certain date. O. J. Moore was under no obligation to pay anything until the last day of the month, and then only in the event that Hannah was then living.

As bearing somewhat, although indirectly, on the question, see *Streeter v. Gleason,* 120 Iowa 703; *Ober v. Seegmiller,* 180 Iowa 462; *Darling v. Dodge,* 200 Iowa 1303.

We reach the conclusion that, at the time of garnishment, there was no debt either due or to become due from the garnishee, within the meaning of the garnishment statute, and hence no sum in the hands of the garnishee which at that time was subject to garnishment. It follows that the action of the district court in discharging the garnishee was correct, and the judgment appealed from is—*Affirmed.*

EVANS, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.

KINDIG, J., not participating.