### MARGET J. RUBLE v. ANNA D. RUBLE.[1]

October 7, 1938.

No. 31,737.

*Marshall S. Snyder*, for appellant.
*J. O. Peterson*, for respondent.

STONE, JUSTICE.

Action by daughter-in-law against mother-in-law for alienation of the affections of plaintiff's husband, son and only child of defendant. After verdict for plaintiff and denial of her motion for a new trial, defendant appeals from the judgment.

[1]Reported in 281 N. W. 529.

Plaintiff and George Ruble, defendant's son, were married March 10, 1928. Immediately their home was established on a farm near Albert Lea, owned by Charles Ruble, defendant's husband. From then until the spring of 1934, the senior Rubles resided in Albert Lea. But in April, 1934, Charles Ruble became ill, and they moved back onto the farm, where he died after an illness of some few weeks. There is evidence that plaintiff and her father-in-law got along well.

By March, 1936, such friction had developed between plaintiff and her husband that a separation occurred. That summer plaintiff commenced a divorce action against George. His answer was, among other things, a tender of reconciliation coupled with an invitation to plaintiff to return to the farm home and resume their marital relationship. Plaintiff promptly made a sincere but ineffectual effort to meet that laudable advance by her husband.

Up to this point there is nothing, we assume conformably to the argument for defendant, upon which to hold defendant liable. There is evidence of some trouble between plaintiff and defendant. It does not make the case for plaintiff but may be an explanatory preface to what followed.

In point of legal title the farm had become, on the death of Ruble, senior, the property in common of defendant and George. Nevertheless, when plaintiff accepted the invitation of her husband and returned to the family home, then as much his home (and, potentially, plaintiff's also) as defendant's, she encountered the open and, as the jury could well have believed, hostile if not venomous, opposition of defendant. Plaintiff testified that she "wasn't refused to go in by George," but that Mrs. Ruble quite effectually, by word and act, barred her way. Defendant "slammed the door shut and turned the lock," telling plaintiff, "You have no business here whatever; this is my home." Plaintiff persisted in her effort. Defendant continued to be obstreperous in opposition, telling plaintiff she had "no business here whatever, coming back like this." When plaintiff finally got upstairs into the bedroom which had been hers and her husband's, defendant followed and objected. Further

details may be passed in silence. Plaintiff continued in the home for six weeks with no relaxation of defendant's open hostility. She was not permitted during that time to do any portion of the housework. She was practically confined to a room by herself, and neither there nor elsewhere was she permitted to have the company of her husband, at least with any privacy.

In short, the credit attached by the jury to plaintiff's evidence was followed necessarily by the conclusion that defendant maliciously interfered to prevent that reconciliation between husband and wife which the former solicited and the latter attempted to bring about. Against defendant, that spells liability under any view of the law. Annotation, 108 A. L. R. 408 (410 and 419). See also Street v. Rosebrock, 173 Minn. 522, 217 N. W. 939; 30 C. J. p. 1126; Annarina v. Boland, 136 Md. 365, 111 A. 84; Amellin v. Leone, 114 Conn. 478, 479, 159 A. 293. In the Annarina case there had been a separation of the spouses under articles of separation. It was held that however far such a circumstance might go in mitigation of damages, it was not a bar to the action for alienation of affections. In the Amellin case the jury was instructed that: "The husband has a right of action   *   *   *   even though no affection existed at the time of the wrongful acts committed. No one has a right to interfere to cut off any chance of its springing up in the future, and so long as the husband keeps his marriage contract, so long he has a right to the conjugal society and affection of his wife. Possibly he may regain these if they be lost and this possibility is his valuable right." That, in substance, was held correct as expressive of "the sounder rule" and as being "consonant with a sound public policy."

The suggestion for defendant that the verdict can be justified only by building inference on inference is untenable. Defendant's testimonial denials are put out of the case by the adverse verdict. And defendant's conduct was no matter of inference, although her motives may be come at only by inference from her conduct. Ordinarily there is no other expression of improper motive. Bad mo-

tives are seldom given voice. Hence conduct is nearly always not only the best, but the only evidence of their presence.

It is incorrect to argue that defendant, as a parent, is the beneficiary of any special presumption not accorded to strangers. She was entitled, with every litigant, to the initial presumption of right conduct. She had the right to counsel her son in any manner within boundaries fixed by good faith. That created no special presumption in her favor, but did place her in the particular and somewhat enlarged field, enjoyed by parents, for operation of the presumption of good faith.

Judgment affirmed.