367 P.2d 625

**Ruth McNELIS, Appellant,**

v.

**Margaret Ann BRUCE, Appellee.**

**No. 6877.**

Supreme Court of Arizona,

En Banc.

Dec. 29, 1961.

Marvin Johnson, Phoenix, for appellant.

Harry Stewart, Jr., and Trew, Woodford & Dodd, Phoenix, for appellee.

STRUCKMEYER, Chief Justice.

This is an appeal from a judgment wherein plaintiff recovered $15,000 compensatory damages and $7,500 punitive damages based on a claim that the defendant had alienated the affections of plaintiff's husband.

The plaintiff-appellee and one Robert Bruce were married on December 4, 1954, at Salome, Arizona. Plaintiff at the time was seventeen and Bruce was thirty-five or thirty-six years of age. In January of 1955 plaintiff and Bruce moved to California. There is a dispute as to the length of time they resided there, however, it is undisputed that plaintiff returned to the home of her parents in Phoenix prior to the birth of her first child on December 1, 1955. Bruce returned to Phoenix in November. In January or February of 1956, plaintiff, Bruce, and the child returned to California. They continued living together until June or July of that year. Plaintiff then, together with the child, because of marital difficulties and differences, returned to the home of her parents. Shortly thereafter Bruce returned to Phoenix but did not live with the plaintiff.

On August 20, 1956, plaintiff and Bruce signed what was designated a "separation agreement" and thereafter continued to live separate and apart, although he visited plaintiff and the child at the home of plaintiff's parents. A second child was born in November of 1957. Plaintiff testified that she and Bruce continued to have sexual relations although they maintained separate living quarters. Bruce denied having sexual relations with plaintiff during the period when they were living apart.

The defendant-appellant, Ruth McNelis first became acquainted with Bruce in January of 1957, having met him at the restaurant where he was employed. She was at that time married to one James McNelis. After this meeting the defendant and Bruce saw each other socially and in April of 1957 they met in California and lived together for approximately five days in a motel where they registered as husband and wife. Before returning to Arizona the defendant informed her husband that she intended to secure a divorce. After defendant and Bruce returned to Arizona they continued to see each other. The plaintiff obtained a divorce on July 30, 1957. The defendant and James McNelis were divorced on September 20, 1957. Thereafter, the defendant and Bruce were married in Michigan on January 14, 1958.

Plaintiff commenced this action against the defendant for alienation of affections on September 10, 1957. At the conclusion of the trial on October 23, 1958, a verdict was returned in favor of the plaintiff awarding her fifteen thousand dollars compensatory damages and seventy-five hundred dollars punitive damages. Judgment thereon was entered in favor of the plaintiff. Plaintiff then caused a writ of garnishment to be issued directed to James McNelis, the former husband of defendant. Defendant made motions for a new trial and to quash the writ of garnishment. It is from the denial of these motions as well as certain alleged errors committed during the course of trial that this appeal stems.

Defendant's first and third assignments of error are closely related and will be considered together. Defendant assigns as error the failure of the trial court to direct a verdict in her favor at the close of plaintiff's case and at the conclusion of all the evidence for the reason that all the evidence conclusively proved that the affections of the plaintiff's husband were transferred to defendant after plaintiff and her husband had separated. Defendant also assigns as error that the lower court erred in failing to direct a verdict in her favor for the reason that as a matter of law an alienation of affections suit cannot arise from facts occurring after the husband and wife entered into a formal separation.

■ We agree with defendant that the evidence does show that there was no alienation of affections until after plaintiff and Robert Bruce separated. Plaintiff and her husband had been living separate and apart at least from a period commencing in August of 1956. It is undisputed that defendant did not meet or become acquainted with plaintiff's husband until sometime in January, 1957. However, we do not agree that a cause of action for alienation of affections cannot arise after the husband and wife are separated or after they have entered a formal separation.

■■ The gist of an action for alienation of affections is founded upon facts which support an injured spouse's claim that there has been an unprivileged, intentional interference with the legally protected marital rights of the aggrieved spouse. The legally protected marital interests include the affections, society and companionship of the other spouse, sexual relations with the exclusive enjoyment thereof, and in the case of a wife they include support by the husband. Restatement of the Law, Torts § 683, Comment b. Numerous cases have recognized that such an action can be maintained notwithstanding the fact that the party maintaining the action was living separate and apart from his or her spouse when the conduct causing such alienation occurred. Koenig v. Corcoran, 199 F.2d 37 (9th Circuit 1952); Annarina v. Boland, 136 Md. 365, 111 A. 84; Dey v. Dey, 94 N.J.L. 342, 110 A. 703; Bradbury v. Brooks, 82 Colo. 133, 257 P. 359; Ruble v. Ruble, 203 Minn. 399, 281 N.W. 529; Booth v. Krouse, 78 Ohio App. 461, 65 N.E.2d 89; Restatement of the Law, Torts § 683, Comment d. The underlying rationale in support of such a suit, where the alleged alienation occurred at a time when the husband and wife were separated, is that there is always a possibility of reconciliation which the law encourages and that one who by his or her wrongful conduct unlawfully interferes with and prevents this possibility of reconciliation should be held accountable.

Defendant in support of her contention that a formal separation coupled with actual physical separation should constitute an absolute defense relies on the case of Fleming v. Fisk, 66 App.D.C. 350, 87 F.2d 747 (1936). There the trial court directed a verdict in favor of the defendant which was affirmed on appeal. On the facts that case can be distinguished since the alienation of affections occurred during a period after the filing for divorce by the plaintiff. In the present case the evidence discloses that the alleged conduct causing the alienation occurred subsequent to the separation but prior to commencement of divorce proceedings. The law encourages a reconciliation of estranged parties when such possibility exists and therefore we hold that a suit for alienation of affections can be maintained notwithstanding the acts causing the alleged alienation occurred while the husband and wife were formally separated. It is significant to note that the acts complained of in this case began within six months after plaintiff and her then husband formally separated. We cannot say as a matter of law that this period of time is of such duration as to rule out any possibility of reconciliation.

■ Defendant assigns as error the failure of the lower court to direct a verdict in her favor for the reason that plaintiff failed to show by a preponderance of evidence that at the time of defendant's acts

plaintiff and Bruce had any affection for each other or that there was any hope of reconciliation. A review of the testimony of the parties and various witnesses discloses sharp disputes, conflicts and contradictions throughout the trial. Two of the ultimate facts on which there was a sharp dispute were whether any affection existed between plaintiff and Bruce and whether there was any hope of reconciliation during the period of defendant's conduct. It is the consistent holding of this Court that where the sufficiency of the evidence to sustain the jury's verdict is questioned on appeal every conflict in the evidence and every reasonable inference therefrom will be resolved in favor of sustaining the verdict and judgment. Sanders v. Beckwith, 79 Ariz. 67, 283 P.2d 235; Stallcup v. Coscarart, 79 Ariz. 42, 282 P.2d 791; Curlee v. Morris, 72 Ariz. 125, 231 P.2d 752; Valley Nat. Bank v. Witter, 58 Ariz. 491, 121 P.2d 414.

■ After reviewing the transcript of testimony and exhibits admitted in evidence, we find that plaintiff did introduce evidence which, if believed by the jury, would sustain findings that some affection did exist and that there was some hope of reconciliation. As to the question of existence of affection, plaintiff testified on direct examination:

"Q. Now, so that we get this straight, from the period in September of 1956, until approximately June 1957, you and your husband did not actually live under the same roof, is that correct? A. That's right.

"Q. You did, however, live together as man and wife at various times and various places and continued to have intercourse with each other during that period, is that correct? A. I won't say various places, but—Yes.

"Q. Well, at your home and when he was here in Phoenix during that period of time, is that right? A. That's right."

As to the possibility of reconciliation plaintiff testified on direct examination:

"Q. I think we had finally gotten to where you and your husband had planned to go to California. Now if you would go ahead and relate what those plans were. A. Well, Bob was going to go first. He was going to look for a job in California. * * * (Comment by counsel for defendant.)

"The Witness: Then I was to follow as soon as he found something.

"Q. And about when was this in relation to at least months of the year that these plans were made? * * * (Objection by counsel for defendant.)

"The Witness: I believe it was December or January. It would be

December of '56 or January '57, that we made those plans"

Under the above cited rule we must resolve these particular conflicts of evidence in favor of the plaintiff.

Defendant next assigns as error the failure of the lower court to give an instruction requested by defendant and the giving of an instruction requested by plaintiff. Although separate assignments have been made in regard to these instructions they will be considered together since both related to "causation". The giving of plaintiff's requested instruction necessarily required the court to refuse defendant's instruction. On the issue of causation the jury was instructed in part that:

" * * * In a suit for alienation of affections, *the defendant's course of conduct must have been a substantial cause, but not necessarily the sole cause in alienating the husband's affections.* (Emphasis supplied.)

■ There appear to be two rules in the United States in respect to the quantum of causation by the defendant's conduct in alienation of affections suits: e. g., "controlling cause," and "contributing cause". The majority of jurisdictions have adopted the former that the wrongful conduct must have been the *controlling cause* of the alienation. Curry v. Kline, 187 Kan. 109, 353 P.2d 508; Kohler v. Campbell, 258 P.2d 1178 (Okl.1953); McKinnon v. Chenoweth, 176 Or. 74, 155 P.2d 944; Jefferson v. Kenoss, 38 Cal.App.2d 496, 101 P.2d 711; Johnson v. Richards, 50 Idaho 150, 294 P. 507; Paulson v. Scott, 260 Wis. 141, 50 N.W.2d 376, 31 A.L.R.2d 706; Johnson v. Lindquist, 177 Minn. 270, 224 N.W. 839; Whittet v. Hilton, 335 Mass. 164, 138 N.E. 2d 596. Some jurisdictions predicate liability if the defendant's wrongful conduct was a contributing cause to the alienation. Squire v. Hill, 100 Colo. 226, 66 P.2d 822; Booth v. Krouse, 78 Ohio App. 461, 65 N.E. 2d 89; Woodson v. Bailey, 210 Ala. 568, 98 So. 809; Clark v. Orr, 127 Fla. 411, 173 So. 155. We can find no case where the defendant's actions were required to be the sole cause of the alienation of the spouse's affection. See Annot., 19 A.L.R.2d 471, 500 (1951).

There are many reasons why parties to a marriage may separate and ultimately secure a divorce, the least of which may be the intermeddling of a third person. Hence, we feel that the actions of a third person should be the dominating cause for the dissolution of the union and approve the controlling cause rule.

■ Superficially the instruction of the court that the defendant's course of conduct must have been a "substantial cause", if standing alone, seems to be contrary to the views expressed herein. We observe, however, that the jury was further and imme-

diately charged as to the proper rule in this language:

"In order to hold Mrs. McNelis, the defendant, liable in this matter, *you must find her conduct was the procurring or controlling cause* of the enticement or alienation, if any, and you must find that there was an actual enticement or alienation by defendant. * * *" (Emphasis supplied.)

The two instructions when considered together advised the jury of the rule of law properly applicable.

The defendant next assigns as error the failure of the lower court to grant a new trial for the reason that the damages awarded plaintiff under the evidence are so flagrantly outrageous as to strike mankind as being beyond all measure, unreasonable, and outrageous thereby showing that the jury was actuated by passion, prejudice, or corruption. Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094; Stallcup v. Rathbun, 76 Ariz. 63, 258 P.2d 821; United Verde Copper Co. v. Wiley, 20 Ariz. 525, 183 P. 737. To establish passion and prejudice in the verdict awarding plaintiff $15,000 compensatory damages and $7,500 punitive damages, defendant argues that the actual pecuniary damages and damages attributable to loss of consortium, wounded feelings, and mental suffering cannot be sustained under the facts.

The problem of assessing damages in suits of this nature is not one which can readily be reduced to any mathematical certainty.

"All courts recognize the difficulty if not the impossibility of formulating any rule to measure loss of consortium and affections in money, and they recognize that a wide latitude must be allowed the jury for the exercise of judgment." 27 Am.Jur. Husband and Wife § 543.

Admittedly the marriage of plaintiff and Bruce, almost from the beginning was one of periodic marital discord which eventually led to a separation. The existence of such a strained marital relationship is only an item to be considered in mitigation of damages. Rank v. Kuhn, 236 Iowa 854, 20 N.W.2d 72; Restatement of the Law, Torts § 683, Comment k. But the testimony of the plaintiff which must have led the jury to reach such a verdict cannot be ignored. She testified that she hoped a reconciliation would be effected, and that although separated they continued to have sexual relations. As a result of these relations a second child was later born to the marriage. We do not believe the verdict awarding the plaintiff $15,000 for compensatory damages necessarily resulted from passion and prejudice in view of the many elements such as loss of society, affection, companionship and support which the jury had a right to take into consideration before arriving at the amount which it believed would adequately compensate her.

■ The award of punitive damages, however, rests upon a different basis. Such damages are not to compensate the plaintiff for the loss which she sustained but rather to punish the defendant for her conduct. We said in Jenkins v. Skelton, 21 Ariz. 663, 673, 192 P. 249, that punitive damages may be awarded where under the circumstances some element of malice, fraud or gross negligence is present. Such damages are for "outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." Restatement of the Law, Torts § 908, Comment b.

In the instant case on the 20th day of August, 1956, plaintiff and her husband entered into a separation agreement. The agreement recites that severe differences had arisen between the parties rendering it impossible for them to live any longer together as husband and wife. It was mutually agreed by paragraph 3:

"That Husband and Wife shall not molest or annoy or in any way interfere with each other in respect of anything whatsoever, nor shall either of them at anytime hereinafter require or by any means endeavor to compel the other to cohabit with him or her, or seek to enforce any restoration of conjugal rights."

■ It was not until January of 1957 some seven months later that defendant first met plaintiff's husband. Ostensibly at this time the marriage was a complete failure. The parties were living separate and apart and superficially at least no longer seemed to bear any love and affection one toward the other. The evidence does not support the assertion that defendant entered into the meretricious relationship with a reckless indifference to plaintiff's interest. To the contrary, defendant's uncontradicted testimony discloses:

"Q. And you knew at that time that Mr. Bruce was still married, didn't you? Answer that yes or no. A. I knew that he—Yes. I knew he was separated, though, or I wouldn't have gone with him.

"Q. I see. If the man was living separate and apart, you wouldn't go with him, is that right, unless he was?

"* * * She didn't say that.

"* * * I didn't say that. I said I wouldn't have gone if he hadn't been legally separated.

* * * * * *

"Q. And even though he was meeting with his wife and seeing his wife and going to her home—A. He was not going to her home.

"Q. You knew he was, did you not? A. Only to give her her weekly money, because her parents didn't want him in their home.

"Q. That is what he told you, is it?

A. Yes."

Under the circumstances where no wanton indifference to plaintiff's interest has been established it was error for the jury to award punitive damages. Restatement of the Law, Torts, § 908, Comment d.

 Defendant finally assigns as error the failure of the lower court to quash a writ of garnishment based upon the judgment secured. The garnishee-defendant in the court below, defendant's former husband, answered the writ of garnishment stating that he was indebted to defendant in certain amounts to become due in accordance with a property settlement agreement executed by defendant. It is the contention of defendant that the periodic payments made and to be made under the agreement were payments of alimony and as such not a debt subject to garnishment. It is true that alimony is not a debt generally within the meaning of garnishment statutes. Siver v. Shebetka, 245 Iowa 965, 65 N.W.2d 173; Malone v. Moore, 204 Iowa 625, 215 N.W. 625, 55 A.L.R. 356, Anno. 361. But funds in the hands of a divorced husband owing to his divorced wife under the terms of a separation agreement may be subject to the claims of her creditors notwithstanding that such funds could not be reached if they were alimony. Farmers & Merchants' Bank v. Dondelinger, 103 Kan. 444, 175 P. 109; Lovejoy v. Kelso, 76 Ohio

St. 598, 81 N.E. 1189, affirming 19 Ohio Cir. Dec. 597.

The question presented is whether the funds sought to be reached are alimony in the truest sense of the term. The agreement mutually provides:

"The parties hereto are desirous of making a settlement of their community and jointly owned personal and real property, * * *."

Other provisions of the agreement make it abundantly clear that all the community assets of a very substantial nature were released, conveyed and set over to the husband. Defendant was to receive a two year old Studebaker Automobile and an antique desk and in addition periodic payments of sums totaling $42,825. These payments according to the agreement are "In lieu of any determination by the court of any property settlement or support rights or alimony for the wife."

 In the light of the circumstances surrounding the dissolution of the marriage such a provision could have been inserted for the purpose of foreclosing defendant from ever claiming alimony or support rights in the future. Moreover, defendant agreed to pay all her own attorneys fees, court costs and expenses in connection with the contemplated divorce and the agreement is not to be affected by remarriage of either party. It is our conclusion that the payments set forth in the agreement were a

substitute for defendant's rights in the community estate and only incidentally as alimony or support and maintenance. As such the agreement was not subject to modification by the court at a future date, Gillespie v. Gillespie, 74 Ariz. 1, 242 P.2d 837, and the obligations arising thereunder being contractual are debts subject to garnishment.

At the time judgment for divorce was rendered, the court in the decree approved the property settlement agreement and directed that it be made a part of the decree as if set forth in full therein. It is the rule that the mere approval of a property settlement in the divorce decree does not operate to make it a part of and enforceable as a decree. Gillespie v. Gillespie, supra. If the language of the agreement shows an intent to make it part of the divorce decree and the agreement is actually incorporated in the decree, the provisions of the agreement may be enforced as an order of the court. As soon as a property settlement agreement is incorporated into the decree the agreement is superseded by the decree and the obligations imposed are not those imposed by contract but are those imposed by the decree since the contract is merged in the decree. Glassford v. Glassford, 76 Ariz. 220, 262 P.2d 382.

The agreement provided specifically:

"This agreement shall be offered in evidence in such action and if acceptable to the court shall be incorporated by reference in any decree that may be granted herein. Notwithstanding such incorporation, this agreement shall not be merged in the decree but shall survive the same and shall be binding and conclusive upon the parties for all time."

The foregoing clause manifests the intention of the parties to the agreement. It was not disapproved by the court but rather adopted as part of the agreement; it therefore must be taken as speaking the intention of not only the parties but of the court that the agreement was not to be merged in the judgment.

The question of whether a merger occurs so as to be able to say that the obligations imposed are not those imposed by contract was extensively considered by the Supreme Court of California in Flynn v. Flynn, 42 Cal.2d 55, 265 P.2d 865, 866:

"The question as to what extent, if any, a merger has occurred, when a separation agreement has been presented to a court in a divorce action, arises in various situations. Thus, it may be necessary to determine whether or not contempt will lie to enforce the agreement, whether or not other judgment remedies, such as execution or a suit on the judgment, are available, whether or not an action may still be maintained on the agreement itself, and

272

whether or not there is an order of the court that may be modified under the provisions of Section 139 of the Civil Code

"In any of these situations it is first necessary to determine whether the parties and the court intended a merger. * * * Whether or not a merger is intended, the agreement may be incorporated into the decree either expressly or by reference. If a merger is not intended, the purpose of incorporation will be only to identify the agreement so as to render its validity res judicata in any subsequent action based upon it. [citing cases] If a merger is intended, the purpose of incorporation is, of course, to make the agreement an operative part of the decree. * * * "

And see Burke v. Burke, 32 Del.Ch. 320, 86 A.2d 51.

The property settlement agreement here falls within the category of those where the parties and the court did not intend a merger. The motion to quash the garnishment was properly denied.

The judgment is ordered modified by striking therefrom the sum of $7,500 awarded as punitive damages and as so modified affirmed.

BERNSTEIN, V. C. J., and UDALL, JENNINGS and LOCKWOOD, JJ., concurring.