430 P.2d 456

**Harold L. EARLEY, Appellant,**

v.

**Sarah Bailey EARLEY, aka Sarah Ann Earley, Appellee.**

**No. I CA–CIV 511.**

Court of Appeals of Arizona.
July 25, 1967.

Rehearing Denied Sept. 1, 1967.
Review Denied Oct. 24, 1967.

Norris D. Walter, Chandler, for appellant.

Penterman & Hamburger, by Sol L. Hamburger, Phoenix, for appellee.

STEVENS, Judge.

The basic problem presented to this Court is whether the monthly payments to the former wife, specified in a property settlement agreement, were incorporated into the decree of divorce and are enforceable as support and maintenance.

The appellee, hereinafter referred to as the wife or as the plaintiff, filed an action for divorce on 9 June 1960. The complaint and summons were personally served in this State. The appellant, hereinafter referred to as the husband or as the defendant, filed no answer and his default was entered. A property settlement agreement dated 19 February 1961, was executed by the parties. On 29 January 1962, the plaintiff, her attorney and her witness, together with an attorney for the defendant, appeared before one of the Court Commissioners of Maricopa County, at which time the necessary evidence was adduced and the decree of divorce was signed and later filed. The minutes of the hearing disclose that the property settlement agreement was marked in evidence. They disclose little additional information which would be of aid to us in our problem.

The decree of divorce recites, in part:

" * * * a property settlement agreement having been introduced dividing the property of said parties and providing for the custody of the minor children of said parties and providing for support of same * * *."

It further recites, in part:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the property settlement agreement admitted as Exhibit 1 in the above entitled action is hereby approved and made a part of this decree as though set forth herein."

Portions of the property settlement agreement are as follows:

" * * * it is the mutual wish and desire of said parties that a full and final adjustment of all of their property rights, interests and claims, including claims for support, maintenance and alimony be had, settled and determined by said parties.

\* \* \* \* \* \*

III

"Each of the parties hereto shall accept the provisions herein made and covenants herein contained in full satisfaction of their respective rights to any and all property * * * and in full satisfaction of the rights which either may have against the other for support, alimony and maintenance, and each party hereby covenants and agrees that at all times hereafter he or she * * * will keep the other free and harmless from any and all debts or liabilities which they respectively may hereafter incur; that neither party will, at any time, contract any debts, charges or liabilities whatsoever for which the other, or his or her property or estate, as the case may be, shall or may become liable or answerable."

The property settlement agreement made disposition of the real and personal property of the parties. The husband agreed to make a specified down-payment on a designated residence in Tucson, where the College of Law of the University of Arizona is located, and to retire a second mortgage on that property.

The crux of the problem facing this Court is Paragraph IX of the Property Settlement Agreement which reads as follows:

"Husband agrees to pay directly to Wife until wife completes her law education and is self-supporting the sum of Two Hundred Dollars ($200.00) per month and, in addition agrees to pay for said period of time all taxes on the house of Wife located at 6222 East Oak Street, Tucson, Arizona, and to pay for her tuition and books for her attendance at the University of Arizona during said period of time; Husband further agrees to pay to Wife as and for support and maintenance of the minor children of said parties the sum of One Hundred Dollars ($100.00) per month for each child."

Prior to the signature, the typed agreement was modified by a longhand insert to read as above quoted. As originally drafted, that portion of the agreement which now reads "until wife completes her law education and

is self-supporting" read, "for a period of three years hereafter".

Paragraph XIII provides, in part:

"* * * the party obtaining such * * divorce shall present to the Court granting same this Property Settlement Agreement for approval at such time as said decree is granted."

Paragraph XIV reads as follows:

"If either party defaults in the due performance of any of the terms, conditions and agreements of this Agreement on his or her part to be performed, the other party is hereby given the right, at his or her election, to sue for damages for breach of this Agreement."

The agreement further provides:

" XV

"Except as herein to the contrary provided, each of the parties shall and does hereby mutually remise, release and forever discharge the other from any and all actions, suits, debts, claims demands and obligations whatsoever, both in law and in equity, which either of them ever had, now has, or may hereafter have by reason of any matter, cause or thing up to the date of the execution of this Agreement, it being the intention of the parties that henceforth there shall be as between them, only such rights and obligations as are specifically provided in this Agreement."

The plaintiff attended the College of Law at Tucson and transferred to a College of Law in a sister State from which she graduated in the year 1965. In September 1965, she was admitted to the practice of law in Arizona. She was employed as a Court Bailiff for one of the Superior Court Judges of Maricopa County from 15 December 1965 to 1 March 1966, on which date she joined the staff of the Office of the Public Defender of Maricopa County. In this latter position her gross salary was $470 a month, resulting in a take-home pay of $362 a month.

The defendant has at all times paid the child support and, prior to 1 April 1966, he paid all of the installments of $200 per month which were to be paid to the plaintiff. Without the benefit of a court order modifying the decree or interpreting the Property Settlement Agreement, he reduced the monthly payments to the wife to the sum of $100 for the months of April and May 1966, and he made no payment for the month of June 1966. The wife secured the issuance of an order to show cause in re contempt for non-payment of the $200 a month claimed to be due to her and to increase the monthly allowance for child support. After the disposition of some procedural problems, the matter was permanently assigned to the Honorable George M. Sterling, a resident Judge of Maricopa County. Judge Sterling was unable to hear the order to show cause at that time as he was occupied with other trial work. The Honorable Jack L. Ogg, the resident Judge of Yavapai County, was assigned the responsibility of hearing the order to show cause. Judge Ogg found himself in a rather unfortunate situation. He undertook the hearing on the order to show cause on the morning of 21 July 1966, at which time he was also assigned a jury trial to commence the same afternoon. He estimated that a full hearing of the various issues which were presented, including a number of factual and legal problems, could well consume several days. Judge Ogg was faced with the alternative of stepping aside without taking any evidence and hence granting no relief, or strictly limiting the evidence to certain payments which had not been made by the husband and Judge Ogg selected the latter alternative. He found a $400 arrearage as of the date of the hearing and directed that the defendant continue payments "until such time as said orders are modified". He further directed payment of $200 for the month of July and allowed an attorney fee to the wife to be paid by the husband.

The husband urges that the property settlement agreement was not incorporated into the decree; that the payments are not for the plaintiff's support and main-

tenance, commonly called alimony; that the condition subsequent relative to the fact that the plaintiff was "self-supporting" was a complete defense and must be determined before an enforcement order could be issued; that if the monthly payments be considered to be support and maintenance for the plaintiff the same must be considered to be an in gross or lump sum award, the entitlement to which had terminated; and that no attorney's fees could be assessed in favor of the former wife in relation to the hearing.

A.R.S. Section 25–319 authorizes decrees of divorce to "direct the husband to pay to the wife such amounts as are necessary for support and maintenance of the wife and minor children of the parties * *. The court may adjudge that amount to be paid in one sum or in installments". There is no fixed rule for determining whether an in gross or lump sum support and maintenance obligation has been decreed. Cummings v. Lockwood, 84 Ariz. 335, 327 P.2d 1012 (1958). If the monthly payments are in settlement of the property rights, then these payments do not fall within the support and maintenance classification. Stone v. Stidham, 96 Ariz. 235, 393 P.2d 923 (1964).

In our opinion the provisions for the payment of $200 a month to the wife until she "completed her law education and is self-supporting" are support and maintenance payments within A.R.S. Section 25–319. These payments are not in settlement of property rights. The intent of the parties is clear even though the terms "alimony" or "support and maintenance for the wife" are not used and even though the term "support and maintenance" was used in relation to the children. It is not essential that these magic words be used in order to have the legal effect of support and maintenance.

We are unable to agree with the husband that the payments for support of the wife are in gross or a lump sum payable in installments as was the situation in

Barnett v. Barnett, 95 Ariz. 226, 388 P.2d 433 (1964). The payments were to continue until the contingency of self-support came into being. In Cummings, the Arizona Supreme Court quotes from the Nebraska case of Ziegenbein v. Damme, 138 Neb. 320, 292 N.W. 921 (84 Ariz. at 340, 327 P.2d at 1016):

> " ' * * * We are living in an era of feminine equality, unhesitating separations, and rapid readjustments. In some of the situations which present themselves between husband and wife, it is unquestionably better for both parties that their rights and obligations be definitely fixed, so that the ties between them can be completely severed and they can face with certainty the measure of the final adjustment which they will be required to make. This can properly be done by a gross allowance of alimony. * * * ' "

This same principle is applicable to the fact situation in the case now under consideration.

Before the sums specified in a property settlement agreement are enforceable by the contempt powers of the court, the requirement for payment must be incorporated within the decree of divorce. Mere ratification, approval or confirmation of a property settlement agreement is not sufficient. Wright v. Stidham, 95 Ariz. 316, 390 P.2d 107 (1964). A property settlement agreement may be incorporated within a decree of divorce by reference. McNelis v. Bruce, 90 Ariz. 261, 367 P.2d 625 (1961). If it is the intent of the parties that the agreement be not incorporated into the decree, it will not become a portion of the decree and cannot be enforced by contempt. McNelis; Gillespie v. Gillespie, 74 Ariz. 1, 242 P.2d 837 (1952). If the property settlement agreement is incorporated into the decree it becomes merged with the decree and is no longer enforceable as an agreement, at least insofar as support and maintenance is concerned, but is enforceable as a decree. Gillespie. In our opinion the property settlement agreement and the decree estab-

lish an intent to incorporate the property settlement agreement into the decree and to merge it with the decree. The provisions for enforcement by suit for damages for a breach of the property settlement agreement relate to the husband's obligation to pay taxes and mortgage payments on the home in Tucson, to pay for tuition and books for law education, and other like civil, non-alimony obligations. They do not negative our holding with reference to support and maintenance to the wife.

 It being our holding that the $200 a month payment to the wife is for support and maintenance, the trial court had the authority to assess attorney's fees. Barnett.

 In our opinion, it would have been better practice for the husband to have filed a petition to modify the decree to terminate the plaintiff's entitlement to support and maintenance. In our opinion, the husband is entitled to defend against an order to show cause seeking to force a continuance of the payments by urging such defense, notwithstanding the fact there has been no modification of the language of the decree. The defense may be established as of the date of the reduced payments or the termination of the payments by showing that the plaintiff was then no longer entitled thereto under the terms of the decree. This does not constitute a retroactive modification of the continuing support and maintenance obligations of the decree.

A.R.S. Section 25–351, subsec. B does not permit the suspension of support and alimony payments pending appeal by the filing of a supersedeas bond. We were informed at the oral argument in connection with this matter that, pursuant to court order entered subsequent to the notice of appeal, the husband has continued to pay to the wife the sum of $200 per month. We are not called upon to decide the disposition to be made with reference to the monthly payments so made should he sustain his position that the plaintiff lost her entitlement to support and maintenance by reason of her becoming self-supporting in early 1966.

This matter is remanded for a further hearing.

DONALD DAUGHTON, Judge of the Superior Court, concurs.

DONOFRIO, Judge (dissenting).

I would agree with the majority that this cause should be referred back for further proceedings, but I regret that I must dissent with the analysis and holding that it is clear that the provision of $200 per month to the wife until she "completes her law education and is self-supporting" is not in settlement of property rights and that the sums due thereunder are enforceable by the contempt powers of the Court in that they were intended to be, and were, incorporated in the decree.

I would hold that the question of intent to incorporate in the decree was sufficiently vague and indefinite that the matter should be referred back to the trial court for determination at the time it makes its decision in relation to the enforcement of the provision by contempt and that such enforcement be contingent upon the presence or absence of the intent to incorporate the provision as part of the decree.

The crucial question is whether the provisions for alimony were embodied in the decree as an order which would thereby be the subject of contempt. This becomes vital because in a contempt proceeding the defendant's intent to violate the Court's order becomes important. By the reasoning advanced in the majority opinion I would agree that many of the provisions of the agreement were brought under court order, however I would question that the alimony provision was intended to be covered. Were it not for the interlineation in longhand by plaintiff and counsel's interpretation of this act and the intimations of fact appearing in the briefs which have not been subjected to the test of a trial or hearing, this Court might then properly consider the question as a matter of law,

but as the record is now made before us I believe the majority is going far afield in its ruling. In Gillespie v. Gillespie, cited by the majority, the Supreme Court stated:

"From 27 C.J.S., Divorce § 301, page 1157 et seq., we quote the following pertinent paragraphs:

"'A divorce court has jurisdiction to approve valid property agreements made between spouses pending or prior to divorce proceedings.' Miller v. Miller, 33 N.Mex. 132, 262 P. 1007.

"Quoting further from 27 C.J.S., Divorce § 301, supra, page 1159:

"'The mere approval of a property settlement in the divorce decree does not operate to make it a part of, and enforceable as, a decree of the court (Kastner v. Kastner, 90 Colo. 280, 9 P.2d 290); but if the language of the agreement shows an intent to make it part of the divorce decree, and the agreement is actually incorporated in the decree, the provisions of the agreement may be enforced as an order of the court.' (Emphasis ours.) Lazar v. Superior Court, 16 Cal.2d 617, 107 P.2d 249."

If the alimony provision is in the nature of a lump sum settlement and the parties intend to not make it a part of the decree and it is not made a part of the decree, then its provisions may not be enforced by contempt as an order of the Court. This would be true of the provision although by its form the payment of a fixed sum is not definite as to the length of time, but definite as to when it terminates and it is specifically agreed that its termination is upon a condition to occur subsequently.

I believe a reading of the agreement and the pertinent portions thereof which are quoted in the majority opinion would show the parties had specifically agreed that the provisions involved were not to be controlled by order of the court, but were part of the property settlement agreement. The agreement starts out with recitals that it is their desire to have "a full and final adjustment of all their property rights * * * including claims for support, maintenance and alimony" and that "Each of the parties hereto shall accept the provisions * * * in full satisfaction of their respective rights to any and all property * * * and in full satisfaction of the rights which either may have against the other for support, alimony and maintenance, * * *"

The agreement does not provide that it is to be made part of the decree, but only states that it is subject to the court's approval. (Paragraph XIII of agreement quoted in opinion), and that if either party defaults, the other party is given the right to sue for damages, thus negating the intention to make it a part of the decree subject to modification or contempt. Paragraph XIV of agreement quoted in opinion.)

Although I am able to find approval of the agreement regarding the alimony provision in the decree, I am unable to find wherein the Court ordered the payments to be made in accordance therewith. Because of the respective contentions made in the briefs and the lack of a complete hearing, we should not pass on this question as a matter of law. I would remand for further proceedings not inconsistent with this dissent.

NOTE: Chief Judge JAMES DUKE CAMERON having requested that he be relieved from the consideration of this matter, Superior Court Judge DONALD DAUGHTON was called to sit in his stead and participate in the determination of this cause.