545 P.2d 436

Allan MARSHICK, Appellant,

v.

Bonnie Sue MARSHICK, Appellee.

No. 2 CA–CIV 1961.

Court of Appeals of Arizona,
Division 2.

Feb. 3, 1976.

Rehearing Denied March 10, 1976.

Review Denied March 30, 1976.

Law Offices of J. Emery Barker by J. Emery Barker, Tucson, for appellant.

Law Offices of John Wm. Johnson by John Wm. Johnson, Reuben Moses Emanuel, Tucson, for appellee.

### OPINION

KRUCKER, Judge.

This was an action by appellee, Bonnie Sue Marshick, against appellant, Allan Marshick, for breach of a post-nuptial property settlement agreement. At the conclusion of a bench trial, the court rendered judgment in favor of appellee for $15,270 and costs. Appellant now contends this was error. We disagree and affirm.

On November 24, 1969, the Marshicks entered into the property settlement agreement which is the subject of this appeal. The agreement gave custody of their children to appellee and divided the community property between them. In addition, it obligated appellant to pay half the children's college expenses and any extraordinary dental expenses incurred on behalf of either child. The agreement further provided that appellant was to pay appellee $500 per month for her support and maintenance and an additional $400 per month for the support and maintenance of the

children. It also contained the following provision:

"That the parties hereto agree that the agreement may be incorporated in any judgment or decree to be entered herein by the court in the event a divorce is granted to either party, but that this agreement shall not merge into any such divorce decree but shall continue as separately enforceable under such decree and shall be self-sustaining."

On May 4, 1970, appellant filed a complaint for divorce in Pima County Superior Court (Cause No. 119243). A decree of absolute divorce was entered on January 13, 1971, which recited:

"IT IS FURTHER ORDERED that the Property Settlement Agreement heretofore entered into by and between the parties which fully settles the property rights and custody rights of the parties is hereby ratified, approved and confirmed by the Court and is hereby made a part of this Decree of Divorce as if fully set forth herein."

In late 1969 when the agreement was executed, appellant was earning approximately $40,000 annually as an engineering consultant. He paid appellee $900 per month from the time the agreement was made until May of 1973. At that time appellant fell upon hard times and reduced the amount of his payments. He stopped the payments altogether in April of 1974. In July of that year he became unemployed and began receiving unemployment benefits.

Appellee filed this action (Pima County Superior Court Cause No. 146344) on January 2, 1974 resulting in the $15,270 judgment, which included $13,720 for unpaid support and maintenance, $350 for unpaid educational expenses, and $1,200 for orthodontia for one of the children.

Appellant contends on appeal as follows: (1) the property settlement agreement was merged in the decree in Cause No. 119243 and hence could not be sued upon; (2) assuming the agreement survived the decree, appellant's duties thereunder were wholly or partially discharged by impossibility of performance; (3) the trial court erred in failing to modify the agreement and in awarding judgment for $15,270.00. Appellant's third contention amounts to a repetition of the first and will not be considered separately.

In answering appellant's first contention, the crucial issue is whether the property settlement agreement of November 24. 1969, was merged in the subsequent divorce decree. If it was, as appellant contends, then there existed no agreement on which appellee's action for damages could be maintained. 27B C.J.S. Divorce § 301(2)c. If no merger occurred, however, then the agreement continued to exist, 27B C.J.S. Divorce § 301(2)d, and the judgment thereon must be affirmed if otherwise correct.

Although there are no Arizona cases directly on point with the facts of this appeal, the applicable rule can be readily gleaned from an analysis of the law in this area. As noted in 24 Am.Jur.2d Divorce and Separation § 908:

"In some of the cases it has been said that the question whether a separation agreement or property settlement is merged in the decree or survives as an independent agreement depends upon the intention of the parties and the court, and in this connection it is immaterial whether the court sets the agreement out in the decree or incorporates it by reference. Thus, where the agreement provides that both parties intend that the agreement shall survive any decree for divorce and be binding and conclusive on the parties, the intention of the parties is clear, and the court will give effect to it." 24 Am.Jur.2d at 1031.

The text cites as authority *Simpson v. Superior Court,* 87 Ariz. 350, 351 P.2d 179 (1960). In *Simpson,* an original proceeding for a writ of prohibition, a husband and wife entered into a written property settlement agreement while they were still married. Under the agreement the hus-

band was to pay the wife $1,350 per month for her support and maintenance. The agreement provided, as does the one in the instant case, that it could be incorporated into any subsequent divorce decree but was not to be merged therein. As here, a later divorce decree approved, ratified, confirmed and incorporated the agreement by reference. In addition, however, it contained a separate provision ordering the husband to pay the wife $1,350 per month.

The husband later obtained an order modifying *the decree* by reducing the monthly payments to $800.00. The wife sought a writ of prohibition contending that the trial court was without jurisdiction to modify the support provision because the agreement survived the decree. The Supreme Court first noted it was true that the agreement did not merge in the decree. This was so because the agreement itself provided that it would not merge, and because the "decree, which made the Agreement 'a part hereof,' did not even purport to supersede the Agreement but merely 'approved, ratified and confirmed' it." (87 Ariz. at 354, 351 P.2d at 182.) The Supreme Court nonetheless denied relief, noting that the lower court had modified only the decree and not the agreement, and possessed the power to do so despite contrary language in the agreement. In quoting from *Goldman v. Goldman*, 282 N.Y. 296, 26 N.E.2d 265 (1940), however, the court made it clear that the modification of the decree did not relieve the husband of any of his obligations under the agreement. The effect of the court's decision in *Simpson* was that under the modified decree the wife could only invoke the contempt power to the extent of $800 per month; but because the agreement was not merged in the decree, she could also bring a separate action to collect the additional $550 per month due thereunder. The logical consequence would be that if her husband paid her nothing at all, the wife would have the option of suing on the non-merged agreement for the entire $1,350 per month.

We note that *McNelis v. Bruce*, 90 Ariz. 261, 367 P.2d 625 (1961) reaffirms the rule that the question of merger depends on the intention of the parties and the court. Further, in *Ruhsam v. Ruhsam*, 110 Ariz. 326, 518 P.2d 576 (1974), supplemented, 110 Ariz. 426, 520 P.2d 298 (1974), the Supreme Court cited *McNelis* and *Simpson* as supporting:

> ". . . the well established rule in Arizona that if there is language in a post-nuptial agreement from which it is clear that *a merger with the divorce judgment is not intended,* the purpose of the incorporation by the court into the judgment will be only to identify the agreement so as to render its validity res judicata in *any subsequent action based upon it.*" 110 Ariz. at 426, 520 P.2d at 576. (Emphasis added)

*See, Savage v. Thompson*, 22 Ariz.App. 59, 523 P.2d 110 (1974); *State ex rel. Cordova v. Cordova*, 21 Ariz.App. 431, 520 P. 2d 525 (1974); *Earley v. Earley*, 6 Ariz. App. 110, 430 P.2d 456 (1967).

We think *Simpson, McNelis* and *Ruhsam* stand for the proposition that whether a separation agreement merges into a divorce decree depends on the intent of the parties and the court, and if the agreement is not merged it may be enforced by an independent action. In the case at bench, the agreement provided that it was not to be merged but was to remain "self-sustaining." In addition, the decree did not purport to supersede the agreement but merely approved, ratified and confirmed it. We hold the agreement survived the decree and appellee was entitled to bring this action.

Appellant nevertheless urges at great length that *Ruhsam, Simpson* and *McNelis* are all incorrect. His own conception of when a separation agreement merges into a divorce decree is this:

> "(a). If the questioned provision of the agreement is for support or maintenance, then it may be modified *and* it may be enforced by contempt proceed-

ings. In such cases merger occurs notwithstanding the intent of the parties because the jurisdiction is with the trial court, and it is *not* for the parties to say whether or not *they* intend the agreement to merge, and (b) If the portion of the agreement is for property distribution, then it may *not* be modified by the court *nor* may it be enforced by contempt since it involves merely a debt for property. In such cases merger does *not* occur whether or not the parties so intend." (Emphasis in original)

In support of these novel rules appellant cites *Hough v. Hough,* 26 Cal.2d 605, 160 P.2d 15 (1945), which was in turn cited as authority by our Supreme Court in *Gillespie v. Gillespie,* 74 Ariz. 1, 242 P.2d 837 (1952). *Hough* does not support the rules for which appellant has cited it, nor was it so understood by our Supreme Court in *Gillespie.* In *Gillespie* a husband and wife entered into a separation agreement under which the husband agreed to pay his wife $200 per month until she remarried. The agreement provided:

"Section 8. Should a divorce be granted, an executed copy shall be presented to the court for approval or for the incorporation of the provisions herein contained into and as a part of the decree of divorce."

The court stated:

"Reading section 8 supra of the agreement together with the divorce decree supra it is clear that it was the intention of the parties that it should become a part of the decree, and that the court made it a part of the decree by reference thereto." 74 Ariz. at 4, 242 P.2d at 839.

It is clear from this language that the *Gillespie* court recognized that the question of merger turns on the intention of the parties and the trial court. *Hough* was merely cited for the uncontroversial proposition that once an agreement is merged in the decree the obligations are imposed by the decree and not by contract.

Appellant contends certain language in *Long v. Stratton,* 50 Ariz. 427, 72 P.2d 939 (1937) establishes a rule that all property settlement agreements derive their sole validity from approval by the court. The language is as follows:

"Of course the court may, and ordinarily will, accept and adopt in its decree the terms of any property settlement submitted to it by the parties, but it does not have to do so, and if it does it is none the less the court's decree that gives such settlement its validity." 50 Ariz. at 433–34, 72 P.2d at 942.

Viewed in proper context, this language clearly does not mean what it implies. In *Long,* the property settlement agreement was set forth verbatim in the decree and the husband was ordered to perform its provisions for support and maintenance. Under those facts it was correct to say that the settlement derived its validity from the decree, for there was clearly a merger. The language in *Long* is inapplicable where, as here, the agreement survives the decree.

We express no opinion concerning the effect A.R.S. § 25–317 (Supp.1973) would have if applied to these facts. That section was added in 1973 and is inapplicable here.

Appellant's second contention is that his duty to perform the agreement was wholly or partially discharged by the doctrine of impossibility. We disagree. It is not enough that the contracting party is himself unable to perform. The doctrine of impossibility does not operate unless the contractual duties would be impossible for *anyone* to perform. As stated in 17 Am. Jur.2d Contracts § 415:

"It is generally well settled that subjective impossibility, that is, impossibility which is personal to the promissor and does not inhere in the nature of the act to be performed, does not excuse nonperformance of a contractual obligation. Accordingly, the fact that one is unable to perform a contract because of

his inability to obtain money, whether due to his poverty, a financial panic, or failure of a third party on whom he relies for furnishing the money, will not ordinarily excuse nonperformance, in the absence of a contract provision in that regard." 17 Am.Jur.2d at 867–68.

Here, the reason appellant has not performed is that he has not had sufficient income. This is mere subjective impossibility and does not excuse his nonperformance.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.